In the Matter of the Accounting of ARTHUR W. BENSON et al., Executors of the Will of JOHN BULLARD, Deceased.

The will of B., after various devises and bequests to and for the benefit of his wife, declared it to be his will that the provisions so made should be " accepted and received by her in lieu and bar of her dower, and of all claims she may have upon or against the " testator's estate, as his widow. Upon his death the widow accepted the provisions made for her. *Held*, that said declaration was not simply for the benefit of the other devisees and legatees, but was in ease of the estate, and barred the widow from any other share thereof; and, therefore, that she was not entitled to share under the statute of distributions in two lapsed legacies.

*Pickering* v. *Stamford* (2 Ves. 272, 581), *S. C.* (3 id. 332, 492), disapproved.

The will contained a general residuary clause disposing of " all the rest, residue and remainder of " the testator's estate, " both real and personal," four-fifths thereof were given to beneficiaries named, and one-fifth was given in trust for the benefit of his wife during her life.

*Held,* that the two lapsed legacies did not pass as undisposed of to the next of kin, but fell into the residue, and one-fifth thereof should be added to that portion of the residuary estate to be held for the benefit of the widow.

*Kerr* v. *Dougherty* (79 N. Y. 327), distinguished.

A number of legacies were given without specifying the time of payment, others were made payable within three years without interest. *Held,* that in arriving at the residue, all interest undisposed of, including the income of the funds set apart or held for the payment of these legacies, should be included.

Also *held,* that the widow was entitled to the interest on the share of the residue put in trust for her from the death of the testator; and that, therefore, such interest formed no part of the residue, but as the other four-fifths were not payable until the end of one year from such death, the income thereof (except that of two-fifths the gift of which also lapsed) went into and formed part of the residue.

To ascertain the amount of a general residue all the income of the estate, not otherwise disposed of, must be included.

(Argued June 16, 1884; decided October 7, 1884.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 10, 1883, which affirmed, so far as appealed from, a decree of the surrogate of the county of Kings upon the final accounting of the executors of the will of John Bullard, deceased.

The facts pertinent to the questions discussed are stated in the opinion.

*B. F. Tracy* for appellants.  The surrogate erred in holding that the widow, by accepting the provisions of the will for her benefit, is excluded from sharing in the lapsed legacies, as widow or as one of the residuary legatees. (2 Williamson Exrs. 1063 ; 2 Jarman on Wills [5th Am. ed.], 35, 36 ; Redfield on Wills, 747, 748, §§ 19, 20 ; *Pickering* v. *Lord Stamford,* 2 Ves. Jr. 272, 581; 3 Ves. 332, 492; *Lett* v. *Randall,* 3 S. & G. 83 ; *Sympson* v. *Hornsby,* 3 Ves. 335 ; *Garthshore* v. *Charlie,* 10 id. 17 ; *Vachtel* v. *Breton,* 5 Bro. P. C. 51 ; 2 R. S. 96, § 75.) In England plain words of gift to some person capable of taking are requisite to disinherit an heir at law. (*Berry* v. *Usher,* 11 Ves. 92 ;

*Treyonwell* v. *Sudenham*, 3 Dow. 210 ; *Sykes* v. *Sykes*, 4 Eq. Cas. 200 ; 2 Ch. App. Cas. 301 ; *Atkins* v. *Kron*, 2 Ired. Eq. 58 ; *Youngblood* v. *Norton*, 1 Strobh. Eq. 128 ; *Crosby* v. *Smith*, 3 Rich. Eq. 249.) Where the will has failed to dispose of the property it must be disposed of under the statute. (*Lefevre* v. *Lefevre*, 59 N. Y. 447 ; *Bennett* v. *Batchelor*, 1 Ves. Jr. 67 ; *Arnold* v. *Chapman*, 1 Ves. Sr. 108.) Where an exemption is created in a will for the benefit of a particular person, if that person cannot take it the benefit never arises. (*Waring* v. *Ward*, 5 Ves. 676.) A widow, unless barred by the language of the will, takes both under the will and under the statute. (*Garthshore* v. *Charlic*, 10 Ves. 17, 21, note 4 ; *Sullings* v. *Richmond* 5 Al. 187 ; *Seabrook* v. *Seabrook*, 10 Rich. Eq. 495.)

*Jasper W. Gilbert* and *Benj. D. Silliman* for respondents. The claims of the widow were limited by the provisions for her made in his will by the testator, she having accepted the same. (*Daverhill* v. *Fletcher*, Amb. 244 ; *Chamberlain* v. *Chamberlain*, 43 N. Y. 423 ; *Glen* v. *Fisher*, 6 Johns. Ch. 33 ; *Blake* v. *Bunbury*, 1 Ves. Jr. 523 ; *Lefevre* v. *Lefevre*, 59 N.Y. 435.) The maxim of *stare decisis* should be rigidly enforced. (*Stalker* v. *Macdonald*, 6 Hill, 93 ; *Towle* v. *Forney*, 14 N. Y. 423, 429 ; *Baker* v. *Lorillard*, 4 id. 257 ; *Williams* v. *Town of Duanesburgh*, 66 id. 129, 133 ; *Hoyt* v. *Martense*, 16 id. 233.) The widow is not in any sense heir or next of kin. (*Luce* v. *Dynham*, 69 N. Y. 36 ; *Kettletas* v. *Kettellas*, 72 id. 312.) The widow's election to take the provision made for her in the will is in the nature of a contract with the testator for the benefit of his estate. (43 N. Y. 443 ; *Lett* v. *Randall*, 3 S. & G. 90.) A party may waive any legal right whether created by contract, statute or fundamental law. (*Embury* v. *Conner*, 3 N. Y. 511 ; *Phyfe* v. *Elmer*, 45 id. 102.) The court cannot impute an intention to the testator contrary to the legal effect of his will. (*Hetzell* v. *Barber*, 69 N. Y. 1.) The question, whether the testator intended by the provision in his will to debar his widow from further participation in his estate, is one of inter-

pretation. (*Thomson* v. *Burra*, L. R., 16 Eq. 592, 605.) The testator must be presumed to have acted upon the rule of law established in *Chamberlain* v. *Chamberlain* (43 N. Y. 423), and to have relied on the disposition of the undisposed of portion of the estate under that decision. (*Davila* v. *Davila*, 2 Vern. 724.)

*Thos. H. Rodman* for William M. Bullard, respondent. The surrogate decided correctly in excluding the widow from sharing in the lapsed legacies. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 441–444; 2 Jarman on. Wills, 743; *Kerr* v. *Dougherty*, 79 N. Y. 346–349; *Beekman* v. *Bonsor*, 23 id. 312; *Krymsker* v. *Northcote*, 1 Swanst. 570.) As the testator made all specific and not general residuary legatees, the rule that the residuary legatee takes portions of the estate undisposed of or of which the dispositions fail does not apply. (*Kerr* v. *Dougherty*, 79 N. Y. 349; 2 Redf. on Wills, 447.) The persons named in the twenty-third clause of the will take only specific portions of the residue contemplated by the testator by name. (79 N. Y. 349; 2 Redf. on Wills, 119; *Skrymsker* v. *Northcote* 1 Swanst. 570.)

EARL, J.    John Bullard died in January, 1881, leaving a will dated February 4, 1876, and leaving a widow and next of kin, but no children.    He devised to his wife, Jane E. Bullard, a valuable house in Brooklyn, and bequeathed to her household furniture, paintings, books, horses and carriages and $150,000 in money, which sum he directed his executors to pay within three years after his death at such times and in such amounts as they in their discretion should think proper, and until full payment to pay her semi-annual interest upon the sum unpaid to her, computed from the time of his death.    He also directed that such legacy to his wife should take precedence in payment over all the other legacies given in his will; and he gave various other legacies, among which was a legacy of $25,000 to his brother William, and one of $2,000 to his cousin Ann Eliza Garnet.    The residue of his estate he disposed of as follows:

Two-fifths thereof to his brother William, one-fifth thereof to each of his nephews, John R. and Lewis H. Bullard, and the remaining fifth thereof to his executors, upon trust to invest the same and receive and pay the income thereof to his wife during her life, and after her death to pay the principal thereof to his brother William and the two nephews, John R. and Lewis H., in equal shares. After the devises and bequests contained in the will, there was the following provision in the twenty-fourth paragraph thereof: "It is my will, and I do hereby declare that the devises and bequests hereinbefore made, to and for the benefit of my beloved wife, Jane E. Bullard, are made and shall be accepted and received by her, in lieu and bar of her dower, and of all claims she may have upon or against my estate as my widow."

William Bullard and Ann Eliza Garnet both died before the testator, and it is conceded by all parties that the legacies to them lapsed, and that the share of William Bullard in the residue lapsed, and that as to such share the testator died intestate.

The widow accepted the provisions made for her in the will, but notwithstanding this her executors, the appellants, claim that they as such are entitled to one-half of the lapsed legacies under the statute of distributions; and the executors of the husband, the respondents, claim that, by accepting the provisions made for her in the will, she was, under the twenty-fourth paragraph thereof, barred of any further share in the estate; and so it has been held by the surrogate and Supreme Court.

The claim of the appellants is that the provision barring the widow was inserted in the will for the benefit of the other devisees and legatees, and that no one but such devisees and legatees can set up the bar against her. The claim of the respondents is that the bar was inserted in the will for the benefit of the other devisees and legatees not only, but in ease of the testator's estate, the provision for the widow, in the mind of the testator, being sufficient and all she was to have out of his estate.

The learned counsel for the appellants, to support his contention, cites 2 Williams on Executors, 1063 ; 2 Jarman on Wills (5th Am. ed.), 35, 36 ; 2 Redfield on Wills, 747, 748, §§ 19, 20 ; and these text-writers sustain him.   They all lay down the rule substantially that a gift to a widow, in satisfaction of all claims on the testator's estate, does not preclude her from claiming her share in the personalty under the statute of distributions in the event of a failure of a bequest of that property ; and they cite for the rule the case of *Pickering* v. *Stamford* (2 Ves. 272, 581 ; 3 id. 332, 492).   In that case a testator gave certain parts of his real and personal estate to his wife, declaring that the provision thus made for her was and should be in bar and full satisfaction of all dower, or thirds which she could have or claim " in, out of, or to all or any part of his real and personal estate, or either of them."   Then after certain bequests to his next of kin, he gave the residue of his estate to his executors upon certain charitable trusts ; and such gift of the residue was held to be illegal, so that the testator, as to the residue, actually died intestate.   The master of the rolls at first (2 Ves. 581) held that the widow was barred by the provisions made for her of all interest in the estate of her husband.   But subsequently, his attention having been called to the case of *Sympson* v. *Hornsby*, decided by Lord COWPER as chancellor, he reversed his former decision on the authority of that case and held that the widow was not barred (3 Ves. 332), and his decision was affirmed by the chancellor.   (3 Ves. 492.)

We are not satisfied with the reasoning upon which the decision in *Pickering* v. *Stamford* rests.   It is difficult to understand the opinion of the chancellor.   He held that he was bound to close the will and could not look at it.   It was easy to reach the conclusion that the statute of distributions must control if the will was wholly ignored.   It cannot in such a case be ignored.   It must be looked at and its language must be construed for the purpose of arriving at the intention of the testator.   What did the testator mean in this case ?   He made an apparently liberal provision for his wife, and then declared that it should be in lieu and bar of her dower and of all claims

she might have upon or against his estate as widow. What reason is there for saying that the bar was intended for the benefit of the other devisees and legatees named in the will? None that I can perceive. If he had meant that and no more, language expressing just that could have been used. On the contrary he used the most comprehensive language "all claims" she may have upon or against his estate as widow. He clearly had in mind his whole estate. He had made for her what he deemed a suitable provision in view of all the circumstances — all she should have out of his estate, and then provided that she should have no more. It is mere guess-work to suppose that if he had known that the two legatees would die before him, he would have made a more ample provision for his wife. The just inference is that he gave his wife all he intended under any circumstances she should have. If the bar was to operate to exclude the widow as to the personal estate, only in case the bequests became operative, then it was unnecessary, as the bequests would carry that estate away from her in spite of any thing she could do or any claim she could make. According to the contention of the appellants, the bar was to be inoperative in the only case, to-wit, that of lapsed legacies, in which it could be useful or have any effect.

It is conceded that if such provisions are made in lieu of dower it will bar the widow, not only of all claim in the real estate owned by the testator at the date of his will, but in all the real estate afterward acquired by him. So, too, if a testator makes a provision for his wife in lieu of dower and then devises his real estate away from his heirs by a devise which lapses by the death of the devisee in the life-time of the testator, or which for any other reason becomes void and inoperative so that the real estate descends to the heirs of the testator, can it be doubted that the widow would, by accepting the provisions made for her, be barred of dower in the real estate? It could not be said that the provision in such case was made for the benefit of the devisee, but it would be held to have been made in ease of the real estate to whomsoever it might go. It is impossible for me to perceive why the same

rule should not operate in the exclusion of the widow from any share in lapsed legacies of personal estate. If it cannot be said in the one case that the provision was made for the benefit of the devisee, how can it be said in the other case that it was made for the benefit of the legatees? If the heir in the one case can set up the bar, why may not the next of kin in the other case?

It is conceded upon the authority of the case of *Lett* v. *Randall* (3 Smale & Gif. 83), and by the text-writers above referred to, that if in this case the testator had left a portion of his personal estate undisposed of, or if, upon the face of the will he had died intestate as to a portion of his personal estate, his widow would have been barred of any claim as widow in such portion. That concession goes far enough in principle to sustain the bar of the widow in this case. The two legatees had died in the life-time of the testator, and as they resided near him and were nearly related to him he must be presumed to have known it, and he must, therefore, have known that the legacies to them had lapsed. The will spoke at his death and then first took effect. It must be treated as if the testator had made no disposition of the portions bequeathed to the two legatees and as if he had intentionally died intestate as to such portions; and thus the principle laid down by the text-writers and decided in *Lett* v. *Randall* is applicable to this case. This may be treated as a case of intestacy on the face of the will. Legacies to persons having no being are as no legacies. It cannot be said that the provisions for the wife were made for the benefit of legatees not in existence.

The distinction attempted to be made between the case of *Pickering* v. *Stamford* and the case of *Lett* v. *Randall*, and the reasoning upon which it is attempted to sustain the former decision, are so artificial, obscure and illogical that they do not receive the sanction of our judgment. Giving the ordinary force to the language used in paragraph 24, ascribing to it the meaning which we think such language under such circumstances is always intended to have, we can entertain no

doubt that the testator intended to bar his wife of any further share, under any circumstances, in his estate.

If in this case the widow had, prior to her marriage, entered into an ante-nuptial agreement with her husband by which, in consideration of provisions then made for her, she had consented to take and claim no more in his real or personal estate, it is conceded that such contract would have bound her, and after the death of her husband, barred her from any further share or interest in his estate. By accepting the provisions made for her in the will, in lieu of all her rights as widow in the estate of her husband, she assented to all the terms and conditions annexed to the provisions and becomes bound by them just as if she had covenanted to observe them, and her assent can be enforced in equity just as if she had come under a convention or contract. We can perceive no reason for enforcing such a covenant, made before the marriage, that does not exist for enforcing the assent, the legal equivalent of a covenant, given after the dissolution of the marriage by death.

The case of *Pickering* v. *Stamford* has never been followed in this State, and its authority was repudiated by the case of *Chamberlain* v. *Chamberlain* (43 N. Y. 424). In that case the testator made provision for his widow, and declared that if she accepted such provision she should not be entitled to dower in the property of the testator or to receive any other share or interest in his estate. Before the proof of the will the widow executed a paper declaring her election to accept the provision made for her by the will, and releasing the estate, and every part thereof, and the executors, heirs at law and next of kin of and from all interest, claim, right, dower and distributive share in and to the estate and every part thereof. Subsequently some of the provisions contained in the will were held to be invalid, so that the testator died intestate as to a portion of his property. The widow claimed, notwithstanding the provision made for her and her acceptance thereof, her share as widow in the property not legally disposed of by the will, and as to which there was a legal intestacy; and the case of *Pickering* v. *Stamford* was cited to sustain her claim, but it was denied

and held that her acceptance of the provision made for her barred her of any further interest in the estate left by the testator. ALLEN, J., writing the opinion, said· "This condition and limitation was imposed, not for the benefit of the other legatees under the will, but as a just limitation to the claims of the widow upon the estate. It is a testamentary declaration that the provision made for the widow was just and reasonable in view of her age, condition in life and prospective wants, and the amount and value of his estate, and that it ought not to be increased in any contingency." The case of *Pickering* v. *Stamford* cannot stand with that case. In both cases there was a legal, as distinguished from an intentional intestacy, and in both the language barring the widow was substantially the same; and the Chamberlain case is not distinguishable from this. The language barring the widow is substantially the same. In both cases there was an unintentional intestacy; or in this case there was an intentional intestacy, the testator in his life-time knowing of the death of the two legatees, in which event, on the authority of the case of *Lett* v. *Randall* and other cases, the widow was barred. None of the authorities, however, cited by the learned counsel for the appellants, make any distinction between a case of intestacy made in consequence of lapsed legacies and a case of intestacy made by legacies held to be illegal and void as in conflict with some rule of law. Both kinds of intestacy are placed upon the same footing as to the rights of the widow. A testator, by mistake or in ignorance of the amount of his property, may fail to dispose of the whole of his estate, and thus die intestate as to a portion thereof, and yet it is conceded that in such case, by such a provision as is contained in this will, the widow is effectually barred. How can it make any difference in principle, as to the rights of the widow in such a case, whether the testator fails to dispose of his whole estate from ignorance of the facts or ignorance of the law? Nor is the Chamberlain case distinguishable from this on account of the release executed by the widow, because it was held that she executed that, supposing it to be a mere election to take under the will, and the case was disposed of in

this court without taking the release into consideration, and solely upon the provision made for the widow and her election to accept it.    That case, as to the point now involved, was well and carefully considered, and as to it the judges were unanimous; and even if we entertained any doubts as to the soundness of the decision, as it for the first time in this State laid down the rule which is neither unjust nor inconvenient for the construction of such wills as this, we should feel bound to adhere to it as a controlling authority.

So far we agree with the courts below, but there are other features in reference to which we are constrained to differ with those courts.  The will of the testator contains an unqualified, absolutely general residuary clause in these words : " All the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever, whereof I shall die seized, possessed or entitled unto, I give, devise and bequeath as follows, to-wit: " two-fifths to his brother William, one-fifth to each of his nephews, John R. and Lewis H. and the remaining fifth in trust for his wife during her life, and after her death, to his brother and two nephews before named.    While the widow did not take any of this residue absolutely, she was interested in having it as large as it could be under the will, because she was entitled to the income of one-fifth thereof during her life.    The courts below held that the two lapsed legacies of $25,000, and $2,000  did not fall into the residue, but passed as undisposed of to the next of kin.    In this they erred.    The rule is universal, to which there is no exception to be found in any of the books, that lapsed legacies under such a residuary clause as this fall into the residue, and pass to the residuary legatees. In Roper on Legacies, 496, it is said, that " when the lapse is of a general or specific legacy, or of an annuity, it falls into the general residue, and consequently belongs to the person entitled to that fund by the gift of the testator."    In Williams on Executors, 1044, it is said that " when the residuary legatee is nominated generally, he is entitled in that character to whatever may fall into the residue after the making of the will by lapse, invalid dispositions or

other accident." In 2 Redfield on Wills, 442, it is said that "it seems to be well settled that a residuary bequest as to personal estate carries not only every thing not attempted to be disposed of, but every thing which turns out not to have been effectually disposed of as void legacies and lapsed legacies. A presumption arises in favor of the residuary legatee as to personalty against any other person except the particular legatee. The testator is supposed to give it away from the residuary legatee only for the sake of the particular legatee." In *Reynolds* v. *Kort right* (18 Beav. 417, 427), the learned judge writing the opinion said: "The result is that every thing which is ill-given falls into the residue." To the same effect are the following authorities in this State. (*James* v. *James*, 4 Paige, 115; *King* v. *Strong*, 9 id. 94; *King* v. *Woodhull*, 3 Edw. Ch. 79; *Banks* v. *Phelan*, 4 Barb. 80.) But the testator may, by the terms of the bequest, narrow the title of the residuary legatees, as where it appears to be his intention that the residuary legatee shall have only what remains *after the payment of legacies;* and he may so circumscribe and confine the residue as that the residuary legatee will be a specific legatee, and then he will not be entitled to any benefit accruing from lapses unless what shall have lapsed constitute a part of the particular residue. But, as said by Lord ELDON in *Bland* v. *Lamb* (2 Jac. & Walk. 406) "very special words are required to take a bequest of the residue out of the general rule." In *Banks* v. *Phelan* a learned judge said that the only exception to the general rule is "when the words used in the will expressly show an intention on the part of the testator to exclude such portions of his estate as are mentioned in any of the previous clauses of the will from falling into the general residue." There is nothing in this will showing that the testator meant to exclude any thing from or to circumscribe or limit the residue. The courts below excluded these lapsed legacies from the residue upon the authority of the case of *Kerr* v. *Dougherty* (79 N. Y. 327). But that case was misconceived. It was there held that there was no general residuary clause; that the testator there meant to limit and circumscribe the residuary clause

and used such language as to show that it could not be increased by the lapsed legacies. The general rule, as we have laid it down, was recognized in the prevailing opinion, but it was held that the language of the will then under consideration, and the facts, took that case out of the rule. Therefore one-fifth of these two lapsed legacies should have been added to the residuary estate which was to be held in trust for the widow.

As I understand the decree of the surrogate, in arriving at the residue in which the widow was to share, he excluded all interest which accrued subsequently to the death of the testator, and in this he erred. All interest, otherwise undisposed of, fell into the residue. There were a number of legacies as to which no time of payment was specified, and they were payable at the end of the year without interest; and there were a number of legacies, in terms payable within three years without interest. The income of the funds set apart, or held for the payment of these legacies, should have been added to the residue.

The Supreme Court did not err in holding that the widow was entitled to the interest on the share of the residue put in trust for her from the death of the testator (*Cooke* v. *Meeker*, 36 N. Y. 15; *Lynch* v. *Mahoney*, 2 Redf. Surr. 434; *Williamson* v. *Williamson*, 6 Paige, 298; *Sargent* v. *Sargent*, 103 Mass. 299); and hence such interest formed no part of the residue. But the other four-fifths of the residue were not payable until at the end of one year from the death of the testator, and hence the income of those shares for one year, except as to the two-fifths which lapsed, being otherwise undisposed of, went into and formed a part of the residue. To ascertain the amount of a general residue, all the income of the estate, not otherwise disposed of, must be added to the residue. Ordinarily this is not important as to the interest upon the residue, as both principal and interest go to the same parties. But whenever it is important to any one the residue should be thus ascertained. Here it was important to the widow that every thing should be added to the residue which

belonged there; and hence all the interest for one year, on so much of the residue as did not lapse, excluding her one-fifth, to-wit, on two-fifths thereof, should have ·been added to the residue, so as to make up the true amount from which the one-fifth of principal was to be taken and held in trust for her. It may be difficult to work out all these details, but with the aid of rules referred to in *Williamson* v. *Williamson*, it will not be found impossible.

We are, therefore, of opinion that the decree of the surrogate and the judgment of the General Term should be modified, and that the case should be remitted to the surrogate for judgment in accordance with this opinion, the costs of the appellants and respondents in this court to be paid out of the estate.

All concur.

Judgment accordingly.