Surrogate's Court, New York County, December, 1926.     [Vol. 128

under his employment as a switchtender and was, therefore, precluded from recovering under said policy. If such construction was to obtain, it would apply to any employee of any corporation or person whose duties at all times of course are to protect his employer's property. The whole context of the clause plainly shows that the word " watchman " means one who is employed in protecting against depredations or injuries by the elements.

The defendant sets up a further defense under the 5th subdivision of the general provisions of the policy, which reads as follows:

" (5) This policy shall not cover injuries, fatal or non-fatal, suffered without the territorial limits of continental United States of America or the Dominion of Canada. The insurance hereunder shall not be valid unless the Insured is in sound condition physically and mentally when this policy is issued."

This defense being that the insured was not at the time of said accident in sound condition physically in that one of his arms had been amputated at or near the shoulder a long time previous to the date of issuance of said policy. The accident or injuries were not in any way caused by the fact that the insured had but one arm; and the defendant through its agents and employees who solicited the insurance from the intestate had full-knowledge at the time of the issuance of the policy that the insured had only one arm and must be deemed to have waived that provision of the policy; and while there is no allegation of waiver in the complaint, the complaint and all the proceedings in the case can be considered to be amended so as to allege the waiver of the provision relative to the loss of the arm.

The plaintiff is entitled to a judgment for $1,000, with interest from July 28, 1925, besides costs.

Each party may prepare findings setting up the agreed statement of facts and such conclusions of law as they deem to be established and forward same to me for my rulings thereon.

---

In the Matter of the Estate of Jacob L. Phillips, Deceased.

Surrogate's Court, New York County, December 13, 1926.

Wills — construction — testator directed trust should yield $25,000 annually to widow — accounting shows fund will yield approximately $17,000 to $22,000 annually — sum shown in accounting as balance of income is part of residuary estate and must be transferred to trustee — further trust for testator's daughter never took effect — income from assets used for payment of debts should have been transferred to trustee.

The sum of $5,606, set up in the account submitted on this proceeding as the balance of income, is part of decedent's residuary estate and should be transferred to the trustee thereof to be held as principal of the residuary trust estate which

MATTER OF PHILLIPS. **897**

Misc. 896]    Surrogate's Court, New York County, December, 1926.

testator directed should yield the net sum of $25,000 annually, to be paid to his widow, where it appears that the fund, as it is reported on the accounting, will not yield more than $22,000 annually and may not amount to more than $17,000 a year.

Since at no time were there sufficient assets properly distributable to the trustee, which if so transferred would have yielded an income of more than $25,000 yearly to the widow, the further trust directed to be set up for testator's daughter never took effect.

Income from assets used at divers times for the payment of debts and administration expenses was a part of the residuary estate and should have been set aside for delivery to the trustee.

ACCOUNTING proceeding involving construction of trust provisions of will.

*Hays, Hershfield & Wolf* and *Chadbourne, Stanchfield & Levy*, for the accounting executors.

*Cardozo & Nathan,* for the trustees.

FOLEY, S.   On the settlement of the decree submitted in this accounting proceeding a question is raised as to the distribution of $5,506 set forth in the account as a balance of income.   The executors contend that said sum represents surplus income and should be paid to the testator's daughter.   The trustee named in the will contends that said sum should be paid to it under the terms of the will by which the executors were directed to transfer the residuary estate to said trustee.

Testator's will, after providing for the payment of debts and legacies, directed that the residuary estate be disposed of as follows:

(a) The executors were directed to transfer to the trust such part of the residuary estate as would yield the net sum of $25,000 a year.   That amount was directed to be paid over annually to testator's widow.   If the net income of said share should amount to less than $25,000 per annum, the trustee was authorized, in its discretion, to invade the principal to make up any such deficiency.

(b) The executors were directed to transfer to the trustee all the rest of the residuary estate to be held by it for the benefit of testator's daughter, who was to receive the income thereof during her life.   The remainder over upon the death of the widow of her share of the residuary estate was directed to be added to the fund set aside for the daughter, who was given the power to appoint by will the ultimate remainderman of the entire residuary funds.

At the date of testator's death his estate amounted to $575,000. Legacies totaling $93,770 were paid to the legatees within a few months after his death.   The debts of the decedent totaled $29,475, and they were paid at various intervals during the ten months

Surrogate's Court, New York County, December, 1926.    [Vol. 128

immediately succeeding the issuance of letters testamentary. The administration expenses totaled $38,446, and they were paid at various times during a period of over two years after the issuance of letters. The account also shows that the executors' commissions, totaling $28,038, although no decree has ever been entered allowing such commissions, were paid during the year succeeding testator's death.

One year and six months after testator's death the executors made their first transfer of a block of securities to the trustee, and all of such transfers to date total the sum of $354,582. The account sets forth a balance of principal to be transferred to the trustee amounting to $17,507, so that the total amount of the trust fund, when finally determined by the making of this decree, will not exceed $377,695. It will be seen that at the highest rate of interest obtainable such a fund will not yield more than $22,000 a year, and that amount is greatly in excess of the income which the trustee states it will actually receive and which it contends will not be more than $17,000 a year. The executors, acting under the rule that the income of a trust fund is payable to the beneficiary from the date of testator's death, have paid to decedent's widow income from assets which were used at various times during the first year of administration for the payment of debts and administration expenses. The income from those assets was properly a part of the residuary estate and should have been set aside for delivery to the trustee. (*Matter of Benson*, 96 N. Y. 499, 511; *Matter of Brokaw*, 165 N. Y. Supp. 700.) At no time were there sufficient assets properly distributable to the trustee which, if so transferred, would have yielded an income of more than $25,000 per year. The secondary trust estate directed to be set up for the benefit of testator's daughter, therefore, never took effect. However, no objections were filed to the account, which sets forth the payments of income to testator's widow, and the only question presented is whether or not the sum of $5,606, left in the income account after such payments, should now be added to the residuary trust for her benefit. Under the authorities and all the circumstances set forth above no other procedure would be proper. This sum was improperly described in the account as balance of income. In fact and in law it is part of principal. The contention that the daughter is entitled to payment of that amount under the terms of the secondary trust for her benefit must be overruled. The absurd result of sustaining such a contention would be demonstrated by assuming that a testator left an estate of $1,000,000, with bequests, debts and administration expenses of $950,000, and with a consequent net residue of $50,000. If we followed the rule

MATTER OF SPEIDEN. 899

Misc. 899]     Surrogate's Court, New York County, October, 1926.

suggested in such a case the life tenant of the residuary trust would become entitled to the income from the gross fund from the date of death and thereby would deprive the remainderman of a substantial part of the trust fund. In the supposititious case, the income for the period of administration on the assets used for the payment of bequests, debts and administration expenses might exceed the original residue of $50,000. The true income from the date of death must be computed on the residuary trust fund as ultimately computed and set up. I hold, therefore, that the sum of $5,606, set forth in the account as a balance of income, is part of the residuary estate and should now be transferred to the trustee, to be held as principal of the residuary trust. Decree signed settling account accordingly.