In the Matter of the Estate of THOMAS COCHRAN, Deceased.

Surrogate's Court, New York County, June 4, 1941.

*White & Case* [*Dudley Miller* of counsel], for the petitioners.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Walter D. Fletcher* and *David M. Potts* of counsel], for the Bankers Trust Company, as trustee, respondent.

*Mudge, Stern, Williams & Tucker*, for the 856 Fifth Avenue Corporation, respondent.

*Adrian P. Burke*, special guardian.

FOLEY, S.   Various issues are raised in this accounting proceeding brought on by the executors.

The testator was a member of the banking firm of J. P. Morgan & Company.   The fortune which he disposed of by his will was of considerable magnitude.   In his lifetime Mr. Cochran became obligated by a valid agreement to contribute a large sum of money to Phillips Academy, located at Andover, Mass.   At the date of his death there remained due under his obligation a balance of $700,000.   The agreement required the payment of interest upon the unpaid balance at a specified rate.

The executors in the exercise of their judgment deferred liquidation of the amount due for a period of several months.   No claim of negligence in this deferment of payment has been asserted or even suggested.

Dispute arises, however, out of the action of the executors in charging in their account the sum of $14,000 of interest payments to principal.   That amount of interest accrued during the period from the date of the death of the testator to the date fixed within which to present claims, which was July 6, 1937.   The executors contend that the amount thus charged must be considered as an inherent part of the debt for the purpose of any allocation between

principal and income. They characterize the period from the date of death to the last date for the presentation of claims as " a suspense period." They concede that interest which accrued after this period is a proper deduction from gross income, and they have so treated such payments in their account. They contend further that they were unable to ascertain the amount of debt, under the subscription agreement made by the testator, because of certain restrictions contained in the agreement whereby the amount pledged under its terms was limited to a maximum of one-fifth of the net estate. The actual net amount of Mr. Cochran's estate was so large that the limitation never became effective.

The trustee, on the other hand, contends that all interest which accrued after the date of death, and particularly during the suspense period, was a proper income charge against and must be paid out of gross income The contention of the executors is untenable and that of the trustee is sustained. The surrogate holds that under the ordinary rules, payments of interest upon a debt, taxes or other similar charges accruing after death, constitute true deductions from gross income. They can never be paid out of principal unless there is an express direction in the will to that effect.

The rules of law applicable in such a situation are well established. Interest which has accrued to the time of the death of the decedent upon an indebtedness constitutes a principal charge. (*Matter of Rosenstein*, 152 Misc. 777, 782.) Interest accruing after death upon a mortgage or any other form of obligation is a proper deduction from gross income. (*Matter of Albertson*, 113 N. Y. ,434; *Matter of Jackson*, 258 id. 281, 288; *Matter of Thirkield*, 152 Misc. 280; affd., 243 App. Div. 692; *Matter of Bloomingdale*, 172 Misc. 218, 222.) All appropriate charges against income must be borne by the life tenant in order that the corpus of the trust estate shall remain intact until the trust shall have terminated. (*Matter of Albertson, supra.*) It is stated in *Matter of Jackson (supra)*: " The general rule is that the capital of a trust fund should not be impaired by carrying charges unless the intent of the donor may clearly be inferred."

In the comment upon section 233 of the Restatement of the Law of Trusts, the rules, as to the character and method of charging out of gross income the current expenses are set forth: " Ordinary current expenses in connection with the administration and management of the trust are payable out of income. These include regularly recurring taxes assessed against any portion of the principal, water rates, premiums on insurance against fire or other casualty, interest on mortgages and other indebtedness, ordinary repairs, and the trustee's commissions computed upon income." (Restatement, 1 Trusts, 684; 2 Scott on Trusts, 1260.)

Under these rules, in the absence of a contrary mandate of unmistakable import, only net income is payable to the life beneficiary.

In my decision in *Matter of Thirkield (supra)* I held that interest which accrued upon money borrowed by the executor for estate purposes was properly deductible from the gross income during the period of payment. It was not a principal charge. That decision was affirmed by the Appellate Division, without opinion. There is no distinction between interest which is required to be paid upon a debt incurred after death and interest upon the amount of the obligation created by the testator

Counsel for the executors attempt to find support for their contention that interest should be charged out of corpus, in the language of section 17-b of the Personal Property Law. Again, the argument is untenable. To one familiar with the origin and enactment of that section, and to those who would study its terms in the light of the reasons for its enactment, no such interpretation as is claimed here could be given to it. The section was enacted upon the recommendation of the Decedent Estate Commission, of which the author of this decision was chairman, by chapter 706 of the Laws of 1931. (Combined Reports of the Decedent Estate Commission, p. 448.) Its purpose was to abrogate the rule enunciated in *Matter of Benson* (96 N. Y. 499). It was there held that all income hypothetically saved during the administration by that part of the estate which was ultimately used to pay administration expenses, taxes, debts and legacies, formed part of the capital of the estate and such part of that income as was allocated to a residuary trust belonged to the capital of that trust. That rule required the executors to submit in their accounts complicated computations showing all the invested and uninvested moneys in their hands based upon daily balances during the executorial period of administration. The executors were also required to submit separate calculations showing the moneys paid and necessary to pay administration expenses, taxes, debts and legacies again based upon daily balances during the executorial period. In a case where a residue consisted wholly of a trust (*Matter of Benson, supra*), or where it consisted partly of a trust and partly of an absolute legacy (*Matter of Lord,* 134 Misc. 198), income attributed to daily balances of moneys ultimately used for administration expenses, taxes, debts and legacies, when computed at the average rate of return on all assets, was required to be capitalized and added to the tentative principal of the residuary trust. (Estate Administration and Accounting, by Dodge and Sullivan, pp. 417–431.) It was then necessary to recompute the net income payable to the life tenant of such residuary trust upon the aggregate capital. The process of

assuming that the uninvested cash had earned income was a mere fiction. A further fiction was invented which converted the assumed income into part of the capital of a residuary trust. The rule was needlessly refined and defied not only the brain of a lawyer, but that of an expert accountant as well.

With this background of history, the terms of section 17-b of the Personal Property Law are easily understandable. It is a well-established principle of statutory construction that any enactment is to be read " in the light of its history and purpose." (*Matter of Frasch*, 245 N. Y. 174, 180.) When a statute is amended or enacted anew, the Legislature is charged with knowledge of certain legal principles. It will be assumed to have known of judicial decisions interpreting the existing law enunciated by the courts or created by prior statute. (*Matter of Cole*, 235 N. Y. 48. *Orinoco Realty Co.* v. *Bandler*, 233 id. 24; *Matter of Hamlin*, 226 id. 407.)

The changes in the rules laid down in *Matter of Benson* (*supra*), made by section 17-b of the Personal Property Law, may be stated as follows: The addition of any income, assumed to have been earned during the executorial period, to the corpus of a residuary trust was prohibited. The net income actually earned during that period became payable to the life beneficiary of a residuary trust. An appropriate provision in the section restated the existing case law that in the absence of a direction in the will to the contrary, income shall be payable to the life beneficiary from the date of the death of the testator. (*Matter of Bird*, 241 N. Y. 184; *Matter of Stanfield*, 135 id. 292.)

The section deals exclusively with net income actually earned on the assets of the estate. It did not change the general rule of trust administration referred to above, which provides for the method of computation of gross income, the nature of income deductions and the final arrival at true net income. (Restatement, 1 Trusts, § 233; 2 Scott on Trusts, § 233.) There is not the slightest indication in the section of any intent on the part of the Legislature to change those rules which make interest upon a mortgage or interest upon any other form of debt which accrues after death, a proper deduction from gross income in the computation of net income payable to the life tenant.

The surrogate, therefore, holds that the account is incorrect and that the executors have improperly charged to principal the amount of interest due under Mr. Cochran's subscription agreement to Phillips Academy.

Pursuant to the stipulation of the parties, the beneficiaries of the pecuniary trusts created by the thirteenth, fourteenth and sixteenth paragraphs of the will are entitled to income from the date of death at the rate of two and one-half per centum.

Because of the distinctive language of the will, the penalties paid on the State and Federal estate taxes are principal charges. (*Matter of Clark*, 169 Misc. 202.) No claim is made that the executors were negligent in paying the estate taxes or that they were not paid as promptly as possible.

Submit decree on notice construing the will and settling the account accordingly.