*Decision will be entered under Rule 50.*

ESTATE OF ANDREW J. IGOE, PETER IGOE AND JAMES J. IGOE, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6580. Promulgated April 3, 1946.

*Charles A. Roberts, Esq.*, and *Harold J. Beairsto, C. P. A.*, for the petitioners.
*William F. Evans, Esq.*, for the respondent.

644

**OPINION.**

Van Fossan, *Judge*: The single issue before us is whether or not the amounts credited by the petitioners on the books of the estate are deductible from its gross income as contemplated in section 162 (b) or (c), Internal Revenue Code.[1]

The petitioners contend that such amounts are deductible under either subsection. The respondent asserts that they are deductible under neither. In his statement of the issue, the respondent's counsel

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

  *    *    *    *    *    *    *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year ;

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee heir, or beneficiary.

says "the question before the court is whether or not the conduct of the executors in handling this income constituted a distribution." He thus has narrowed the issue to one of fact, thereby relating it to subsection (c). However, the question here presented merits consideration and discussion under both subsection (b) and subsection (c). Counsel for both the petitioners and the respondent seem so to regard it, since they each submitted arguments pertinent to both subsections.

The petitioners argue that the phrase "is to be distributed currently by the fiduciary to the beneficiary" covers the situation precisely, because under the provisions of the Personal Property Law of New York, section 17–b,[2] in conjunction with section 16–3 of that law [3] and section 146 of the Decedent Estate Law of New York,[4] the beneficiaries, the potential distributees, may demand and recover the income earned by the estate.

Section 16–3 of the Personal Property Law refers to "directions" for the accumulation of income of personal property. There are no such directions in the instrument before us and, therefore, that provision is irrelevant.

Section 17–b provides for the distribution of income, earned during administration, to the beneficiaries of a residuary estate as established by trust or otherwise, if the will contains no express provision to the contrary. This section was adopted to vitiate the treatment of the estate income as corpus under the rule of the *Benson* case (*Matter of Benson*, 96 N. Y. 499) which held that, in order to ascertain the amount of a general residue, all income of the estate, not otherwise disbursed, must be added to the residue. As was stated in *Matter of Cochran*, 176 Misc. 809; 29 N. Y. S. (2d) 249:

The section was enacted upon the recommendation of the Decedent Estate Commission, of which the author of this decision was chairman, by chapter

---

[2] § 17–b. *Distribution of income earned during period of administration.*

Unless otherwise expressly provided by the will of a person dying after this act takes effect, all income from real and personal property earned during the period of administration of the estate of such testator and not payable to others or otherwise disposed of by the will shall be distributed pro rata as income among the beneficiaries of any trusts created out of the residuary estate of such testator and the other persons entitled to such residuary estate. None of such income shall, after such distribution, be added to the capital of the residuary estate the whole or any part of which is devised or bequeathed in trust or for life or for a term of years, but shall be paid ratably to the life beneficiary of a trust, or to the life tenant, or to the absolute residuary legatee, as the case may be. * * *

[3] § 16. *Validity of directions for accumulation of income.*

* * * * * * *

3. All other directions for the accumulation of the income of personal property, not authorized by statute, are void. * * *

[4] § 146. *Action upon refusal to pay legacy or distributive share.*

If, after the expiration of seven months from the granting of letters testamentary or letters of administration, an executor or administrator refuses, upon demand, to pay a legacy, or distributive share, the person entitled thereto may maintain such an action against him, as the case requires. * * *

706 of the Laws of 1931. (Combined Reports of the Decedent Estate Commission, p. 448.) Its purpose was to abrogate the rule enunciated in Matter of Benson (96 N. Y. 499).

Thus, section 17-b serves only to determine and identify the character and status of the estate's income earned during administration. It does not direct when or how that income becomes currently distributable to the beneficiaries thereof.

The petitioners argue that the effect of section 146 of the Decedent Estate Law is to make such income *currently* distributable. We do not so construe that section.

Section 146 does not provide when such distribution shall be made nor does it give the fiduciary the unlimited power to distribute at his will or discretion. It merely gives the beneficiaries the right to maintain an appropriate action against a fiduciary if the latter, after seven months from the granting of letters testamentary or letters of administration, refuses to distribute. When the case is presented to a proper tribunal then, and then only, may the fiduciary be directed to make a distribution deemed proper by the court.

Under the petitioners' theory, a fiduciary is required to make distribution of the current income earned by the estate during its administration. If he should do so and later be confronted with taxes, undisclosed debts, or other obligations of the estate, he might be subject to serious embarrassment or by action from creditors. We do not think that the New York statutes contemplate any such situation.

The fiduciaries did not pay the full amounts to the legatees of the estate. The legatees instituted no action to compel them to do so. Such potential rights as they might have had were neither recognized nor enforced. Hence, under the New York statutes, the net income of the estate was not "to be distributed currently," as provided in section 162 (b).

The petitioners contend further that the entire net income of the estate was "constructively paid" to the beneficiaries as provided in section 162 (c). They argue that the sums placed to their credit on the books of the estate were both legally and practically available upon demand. The respondent's position is that the entries on the estate's books were simply a "bookkeeping gesture" and were never intended to evidence a distribution of the funds except in the final settlement of the estate. He challenges the *bona fides* of the transactions and asserts that they were made for the purpose of reducing the taxable net income of the estate.

At the outset it should be observed that we find nothing whatever in the entire record to suggest that the petitioners' conduct and actions were motivated by a purpose or desire to evade or reduce tax. The fact that money unneeded by the beneficiaries should remain in and be used by the estate does not evidence such a purpose. Distributions were

accomplished by means of specific credits to the account of each beneficiary, duly and properly entered on the books of the estate. These transactions were consummated with full knowledge and consent of the beneficiaries, who were notified of their respective distributive shares of the estate and who reported the amounts so distributed on their income tax returns.

The record amply supports the conclusion that the funds credited to the beneficiaries were readily available to them at all times. In fact, during the period from October 1, 1937, to July 31, 1942, all beneficiaries received numerous large payments in cash, which were charged to their accounts with the estate. The actions of the petitioners in so treating the income earned by the estate were approved in all respects by the surrogate having jurisdiction over the settlement of their accounts. The character and extent of the estate of Andrew J. Igoe, as set forth in detail in the facts, show that the petitioners were fully justified in crediting to the beneficiaries the entire net income received by the estate during the taxable years. See *Commissioner* v. *Crawford Estate*, 139 Fed. (2d) 616. Any chance they took of making an improvident distribution was wiped out by the surrogate's decree. Since the seven-month period established in section 146 had long before expired, there was no legal bar in New York to the distribution made by the petitioners.

The respondent cites *Commissioner* v. *Stearns*, 65 Fed. (2d) 371; certiorari denied, 290 U. S. 670, in support of argument that the provisions of section 162 (c) do not apply to the case at bar. There the court said:

* * * The income must be so definitively allocated to the legatee as to be beyond recall; "credit" for practical purposes is the equivalent of "payment." Therefore, a mere entry on the books of the fiduciary will not serve unless made in such circumstances that it cannot be recalled. If the fiduciary's account be stated inter partes, that would probably be enough; it would certainly be, when a court, as for example, the surrogate in this instance, passes the account and directs payment. * * *

This decision sustains the petitioners' view rather than that of the respondent. Under the facts and circumstances of record, the entry of the income and its availability upon demand constituted, in effect, an "account stated" between the petitioners and each beneficiary. The beneficiaries so acquiesced in that relationship, since they reported the several amounts thereof as income. This is particularly true with respect to Alma Igoe and Marie Keller, guardian for John Francis Igoe. They, through their brother, Paul Keller, were constantly on the watch to see that they received their full share of the income. Keller was attorney for the estate and at all times knew its condition, its receipts and disbursements, its obligations, and its management by the executors. We have no doubt that the action of the petitioners in

crediting the income was beyond their recall. If they had attempted to disturb the entries, prompt preventive action certainly would have been instituted by Keller, whose antagonistic attitude toward the petitioners is thoroughly reflected in the record.

The respondent also relies on *Estate of C. R. Hubbard*, 41 B. T. A. 628, but the facts in that case differ materially from those before us and thus that case is not in point. We hold that the distributions were properly credited to the beneficiaries and that the petitioners are entitled to the deductions claimed, under the provisions of section 162 (c).

*Decision will be entered under Rule 50.*