ESTATE OF B. BRASLEY COHEN, DECEASED, WILLIAM F. COLE AND PAULA C. LUBIC, CO-ADMINISTRATORS, AND WILLIAM F. COLE, PAULA C. LUBIC, CAROL LOUISE LUBIC, WILLIAM F. COLE AS GUARDIAN OF THE ESTATE OF BETTY LOU COLE, A MINOR, PAULA C. LUBIC AS GUARDIAN OF THE ESTATE OF ARTHUR MEYRAN LUBIC, A MINOR, AS DISTRIBUTEES OF THE ESTATE OF B. BRASLEY COHEN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7112.   Promulgated April 8, 1947.

*Harry C. Cogen, Esq.,* and *A. Calder Mackay, Esq.,* for the petitioners.

*A. J. Hurley, Esq.,* for the respondent.

## OPINION.

HILL, *Judge*: Whether the income involved is taxable to the estate or to the individual legatees and devisees depends in part on the applicability of section 162 (b) and (c). Subsection (b) provides in effect that income from the estate "which is to be distributed currently" to the legatees, whether distributed or not, shall be taxable to such legatees and not to the estate. Subsection (b) defines income which is to be currently distributable as including income which "becomes payable to the legatee" within the taxable year. Regulations 111, section 29.162-2 (b), interprets the term "income which becomes payable" as income to which the legatee "has a present right" which right may be derived from "a recognized present right under local law to obtain income or compel a distribution of income."

In view of the above provisions and the interpretations of subsection (b), the question under the present facts narrows down to whether the legatees had a present right under local law to obtain or compel a distribution of the income in question during the taxable year. Section 1010 of the California Probate Code, 1941, provides in part:

*Facts warranting distribution: Petition and Notice: Right to oppose.* When the time for filing or presenting claims has expired and all uncontested claims have been paid, or are sufficiently secured by mortgage, or otherwise, but the estate is not in a condition to be finally closed and distributed, the executor or administrator, or any heir, devisee or legatee, * * * may petition the court for a ratable payment of the legacies, or ratable distribution of the estate, to the heirs, devisees or legatees * * *.

Section 1011 of the California Probate Code provides:

*Hearing and order for distribution.* If, at the hearing, it appears that the allegations of the petition are true, that all inheritance taxes payable in said proceeding have been paid * * * and that no injury will result to the estate or any person interested therein, the court shall make an order requiring the executor or administrator to deliver to the heirs, devisees or legatees, * * * such portion of the estate as the court may designate.

We think it apparent from the above quoted provisions of the local law that the legatees did not have during the taxable year a present right to compel a distribution of the income in question. The legatees did have the privilege of petitioning the court, which they did not exercise, and if they had established certain facts the local court could have, in its discretion, ordered a distribution of the designated portion of the estate. We think the privilege of soliciting the local court's discretion is not the equivalent of a present right to compel distribution. See the discussion of a somewhat similar situation in *Estate of Andrew J. Igoe*, 6 T. C. 639, at 646. We hold that the estate is not relieved from the tax on the income in question by virtue of subsection (b).

Subsection (c) provides in effect that during the period of administration any estate income "which is properly paid or credited" during the taxable year to the legatees shall be taxable to such legatees and not to the estate. Petitioners argue that there was a "mental crediting" and that the legatees reported their shares for tax purposes and that these facts should satisfy subsection (c). There was no bookkeeping entry reflecting credits in favor of the legatees and the record indicates that the bookkeeping system used by the estate made no provision for any such crediting. The reporting of such income by the legatees is not, in our opinion, a substitute for proper crediting by the estate. A credit to be effective for subsection (c) purposes should place the income beyond the estate's control, *Commissioner* v. *Stearns*, 65 Fed. (2d) 371, or make it constantly available to the legatees on demand. *Estate of Andrew J. Igoe, supra.* A "mental crediting" even accompanied by inclusion of income for tax purposes by the legatees, does not satisfy the requirements of subsection (c). We hold that the estate is not relieved from tax for the income in question by virtue of subsection (c).

Finally, petitioners contend that at least such income as was derived from the real estate is taxable to the devisees and not to the estate. Petitioners on brief state that "The net amount realized from properties located in the State of Pennsylvania is so small that no attempt will herein be made to distinguish between California and Pennsylvania law. Petitioners will present their arguments as though all of the income was derived from California properties." We shall, therefore, consider the problem on this same basis and expressly refrain from an interpretation of the law of Pennsylvania in considering the taxable status of the property in that state. Petitioner's argument is based essentially on the fact that under California law real estate is deemed to vest in the devisees immediately on the death of the decedent. In this connection petitioners rely on *Guaranty Trust Co. of New York*, 30 B. T. A. 314, and *George L. Craig*, 7 B. T. A. 504. Under the local law as pertinent to the above cited cases the executor had no right to possession of the real estate and no right to collect the income therefrom. See in this connection *Coann* v. *Culver*, 80 N. E. 362; 188 N. Y. 9; and *In re Fitzpatrick's Will*, 169 N. E. 110; 252 N. Y. 121. A careful reading of the *Craig* and *Guaranty Trust Co.* cases will indicate that the income in question was not, in effect, subject to administration at all.

In the instant case under the California law, though the real estate vested in the devisees at decedent's death, it was subject to the possession of the administrators, who were entitled to collect the rents therefrom. The real estate itself and the income therefrom were, in other words, subject to administration and to the decedent's debts. Sec. 581, Probate Code of California.

Under § 582 of the Probate Code of California the executor or administrator must deliver possession of real property to the heirs or devisees "unless the income therefrom for a longer period or a sale thereof is required for the payment of the debts of the decedent." It has not been shown in the instant case that the administrators were legally obligated to thus deliver possession. The administrators did not deliver possession. No court order compelled delivery of possession. The devisees did not seek to obtain possession, but, on the contrary, apparently acquiesced in the estate's returning of the rental income of Federal tax purposes. On December 31, 1942, the estate had cash on hand of some $163,000, with Federal and state income taxes unpaid and the Federal estate tax unpaid, which latter tax amounted to some $157,000. Under these circumstances and on the state of the record, we do not think we can conclude that the administrators were obligated to deliver possession of the real estate to the devisees after December 10, 1942, or during the remainder of that month. Consequently, the instant case poses the question of whether the income from the real property is taxable to the estate or to the devisees holding title thereto. More simply stated, the question is whether for income tax purposes such income is that of the estate or that of the individual devisees. We think the answer to this question is furnished by section 161 (a) (3) of the Internal Revenue Code, which imposes an income tax on estates, including "income received by the estates of deceased persons during the period of administration or settlement of the estate." This language, coupled with the provisions of section 582 of the California Probate Code, indicates that, for the purpose of determining whether the income here involved from the real property is taxable to petitioner or to the devisees of such property, depends on whether the possession of such income by the administrators was necessary for the payment of the debts of decedent. The reason for attributing income received by the estate during administration to the estate rather than to the devisees holding title to the income-producing property has been well stated in *Kuldell* v. *Commissioner*, 69 Fed. (2d) 739, as follows:

\* \* \* It is perfectly true that under Texas laws an administrator takes no title to the property, either real or personal; that all of it descends to and vests in the legatees under a will, in the heirs, if there is none. It is equally true, however, that it does so subject to the payment of the debts of the intestate, and that it is provided that upon the issuance of letters testamentary or administration, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, and he shall recover possession and hold such estate in trust to be disposed of in accordance with law. It was in recognition of this period of husbandry and control by the administrator, which prudent administration requires, that the Revenue Acts provide that income received by estates during the period of administration or settlement shall be returned and paid by the administrator. \* \* \*

Petitioners rely on *Bishop v. Commissioner*, 152 Fed. (2d) 389, for the proposition that income follows title despite administration. We think the cited case is distinguishable because the property involved therein was the community half of the surviving wife. Consequently, the wife did not derive her title from the decedent, but held title which antedated and persisted after her husband's death. We therefore do not consider the *Bishop* case as controlling the instant situation, which does not involve community property.

Nor do we think it can seriously be argued that the estate was not under administration during 1942. It is true that the estate was solvent and that the claims which had been filed had been paid prior to the end of 1942, but Federal and state income taxes and the Federal estate tax had not been paid, no distributions to the legatees or devisees had been made, and the final accounting was not approved until May 1943. The administrators filed a fiduciary return on behalf of the estate in 1942. Under these circumstances, we do not think it can be said that the estate entity and the administrators' control over it constituted an unreality or an improper prolongation of the period of husbandry during 1942. We have indicated before that we should be slow to disregard the date of final accounting and official discharge. *J. H. Anderson*, 30 B. T. A. 1275.

For all the reasons above stated, we hold that respondent correctly taxed the income in question to the estate.

*Decision will be entered for respondent.*