OPINION. Harron, Judge: The question in these proceedings is whether the amounts of income for 1941 of the estate of Andrew J. Igoe which were credited to each of the petitioners as of May 31, 1941, in the estate’s books of account were “properly” “credited” within the meaning of section 162 (c) of the Code.[1] No other provision of the I. R. C. is involved in the pleadings in this proceeding. The question is considered upon the evidence which was adduced upon the trial of these proceedings. We may not, and do not, take judicial notice of the record made in this Court upon the trial of the proceeding of Estate of Andrew J. Igoe, 6 T. C. 639. See B. F. Edwards, 39 B. T. A. 735, 738. On the question of law presented in these proceedings, the respondent relies upon the decision of this Court in Estate of Andrew J. Igoe, supra, in which he acquiesced, 1946-2 C. B. 3. In the Estate of Andrew J. Igoe, supra, this Court held upon the evidence adduced in that proceeding that proportionate amounts of estate income for 1941 were properly credited to Alma Igoe, and John Francis Igoe, as beneficiaries of the estate of Andrew J. Igoe in 1941. Under the provisions of section 162 (c) of the Code, estate income which is properly credited during a year to a legatee or beneficiary is deductible by the estate in the fiduciary income tax return of the estate, “but the amount so allowed as a deduction shall be included in computing the net income of the legatee heir, or beneficiary.” [Emphasis supplied.] Unless the evidence in these proceedings establishes the ultimate fact that the 1941 income of the estate, in the correct proportionate amounts, was not properly credited in 1941 to each of the petitioners in these proceedings, on the books of the estate, which findings of fact would be contrary and opposed to Findings of Fact made in Estate of Andrew J. Igoe, supra, it follows under the provisions of section 162 (c) that each of the petitioners is required by the mandatory clause in section 162 (c) to include in his (and her) net income for 1941 the amount of the estate income for 1941 which is in dispute in these proceedings. The question presented is chiefly a question of fact and in this respect, all of the evidence in these proceedings has been carefully and diligently examined. However, the question to be decided is, in part, a question of law, involving interpretation of section 162 (c), and this aspect of the question is largely controlled by Commissioner v. Stearns, 65 F. 2d 371. The authorities which have been cited by both parties have been considered. Many of the cases cited by the petitioners are distinguishable on their facts, namely, Carrie G. Cox, 31 B. T. A. 819; Garrett J. Donnelly, 31 B. T. A. 577; Estate of C. B. Hubbard, 41 B. T. A. 628; Estate of B. Brasley Cohen, 8 T. C. 784; Guitar Trust Estate, 34 B. T. A. 857. It is unnecessary for us to point out the differences in the facts as between these proceedings and the above cited cases. It is a fact that the estate in question had net income in 1941, and that all of the net income was credited, in the books of account of the estate, to the five residuary legatees in amounts proportionate to their respective interests in the estate. The question presented by the issue raised in these proceedings is whether the credits to these petitioners in 1941 constituted a true crediting of income effective in making the income so credited to each petitioner available to each, or distributable to each. Upon consideration of all of the evidence adduced in these proceedings, it has been found as a fact that the estate income in question was “properly credited” to each petitioner within the scope of section 162 (c). This finding and conclusion finds support in these circumstances and facts: There is no credible and substantial evidence that the credits of income were sham, or were intended to be ineffective for the purposes of distribution, or were made with an intramural understanding that income so credited was neither available nor distributable. It is the testimony, in substance, of the coexecutors, Peter and James Igoe, that they understood that the crediting of income to the legatees represented making the income available and distributable to the distributees and legatees. This testimony refutes any suggestion that the credits were a sham, or were part of some device or sub rosa understanding that no distributions of income could be made based upon the crediting of income to the legatees. Furthermore, the coexecutors held in the estate assets having a total value substantially in excess, in 1941, of the then unpaid obligations of the estate which consisted chiefly of estate taxes. We understand, nothing in law or fact to the contrary having been shown, that the unpaid obligations of the estate in 1941 were charges which could be satisfied out of estate principal and did not have to be paid out of accumulated estate income. There is evidence that during the course of administration the coexecutors sold, from time to time, principal assets for cash, and there is before us testimony of James and Peter Igoe that during 1941, after the credits were made, they, as coexecutors, were in a position to make distribution of the sums credited in 1941 to the accounts of these petitioners. The preponderance of the evidence establishes that the estate income in question could have been properly paid in 1941 to these petitioners, and ergo, that it was properly credited to them; and no law of New York has been cited which would make payment of the income, or crediting, unlawful. Cf. Simon v. Hoey, 88 F. Supp. 754, affd. 180 F. 2d 354. It is our conclusion upon the evidence that the credits of the 1941 estate income to the respective accounts of these petitioners put the income in question beyond the executors’ recall, that they constituted valid and effective accounts stated between these beneficiaries of the estate and the executors, Commissioner v. Stearns, supra, and that the 1941 income in question was properly credited to each of the petitioners. In the course.of arriving at this conclusion, we have taken into consideration all of petitioners’ contentions and arguments. Two of them warrant particular mention. The petitioners argue that no distribution has ever been made to them of the proportionate amounts of the 1941 estate income credited to them. That contention is rejected as unsound and unfounded in fact. The petitioners by entering into the Settlement Agreement of November 21, 1941, agreed to accept the distributions therein provided in full satisfaction of all of their claims against the estate with respect to both principal and income. And, it is observed, that the decedent specified in'his will that distributions to legatees could be made by the executors in kind or in cash, or partly in kind and partly in cash. In the Settlement Agreement, Alma Igoe agreed to take both cash and property, and under the Supplemental Agreement she realized cash for securities, as did, also, John Francis. We think it is clear that the provisions of the Settlement Agreement were separate and apart from the previously made credits of income to the accounts of the petitioners, which were made on or as of May 31, 1941, that nothing in the Settlement Agreement vitiated or set aside the credits of income on the books of account to these petitioners, and that by operation of the terms of the Settlement Agreement, the petitioners, in fact, received distribution of the 1941 estate income which was credited to them. The petitioners, particularly Alma Igoe, contend that they had no knowledge in 1941, of the crediting of the 1941 income to them, and they argue from that, that there was no proper crediting of income to them in 1941 within the intendment of section 162 (c). This contention taxes our credulity because the petitioners were represented by an attorney, Keller, throughout 1941, and he was in contact with James and Peter Igoe, at least in the preparation of the Settlement Agreement. If the petitioners, albeit one of them was executrix of the estate, were inclined to abstain in 1941 from making certain whether their shares of 1941 estate income were credited to them, as had been done by the coexecutors in 1940, nevertheless they cannot succeed in avoiding the impact of the mandatory clause in section 162 (c) which requires that they include in their net income, income of the estate which was properly credited to them by the estate. Their professed ignorance in the matter is not convincing for it is not likely that, according to standards of reasonableness and prudence, the petitioners did not ascertain all facts about their shares in the principal and income of the estate during the course of preparing and agreeing upon the terms of the Settlement Agreement, if not themselves, then through Keller, their attorney and brother. Alma Igoe was, during 1941, executrix of the estate and is chargeable with knowledge of the administration of the estate unless she was derelict in her duties, which she does not admit, and which we will not assume. Although Alma Igoe’s relationship with her coexecutors was strained during 1941, there is no evidence that either she or her attorney Keller was refused access to the books of the estate. To accept as having merit, the bald assertion of the petitioners that they were wholly ignorant of the crediting to their accounts of the estate income in question, would result in approval of an easy method of avoiding compliance with the requirement of section 162 (c) thatbeneficaries include in their income, income properly credited to them. The respondent’s determinations are sustained. Decisions will be entered for the respondent. SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that— ******* (c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.