PEARL COANN, as Administrator with the Will Annexed of the Estate of MILTON WHITE, Deceased, Respondent, *v.* DANIEL D. CULVER, Appellant.

1. WILL — RESIDUARY LEGACY — DISCRETIONARY POWER OF SALE — WHEN ABSOLUTE TITLE TO RESIDUARY ESTATE VESTS IN RESIDUARY LEGATEES SUBJECT ONLY TO DISCRETIONARY POWER OF SALE CONFERRED UPON EXECUTOR. Where a testator, after making several pecuniary bequests, devised and bequeathed all the residue and remainder of his real and personal estate, in equal shares, to five persons named in his will, and then gave and devised all of his real and personal estate to the person named as his executor, in trust, for the payment of his debts and the legacies previously specified, with power to sell and dispose of the same in such manner and at such time or times as he should deem best for the interests of the estate, and directed him to pay the legacies in full in the order named in the will, the title to testator's property vested, upon his death, in the residuary legatees, subject only to the discretionary power of sale conferred upon the executor; and they, alone, are entitled to the rents and profits of lands owned by testator at the time of his death; the executor was not empowered to receive the rents and profits

of the estate, nor was the power of sale imperative; he took no estate, but simply a power in trust to sell, discretionary in its exercise, as he might find it advisable to act, for the purpose of paying the debts of testator, if any, and the legacies in full in the order in which they were named.

2. Same — When Equitable Conversion of Testator's Realty into Personalty Is Not Created by Express Terms of Will or by Implication — When Administrator with Will Annexed May Not Maintain Action for Rents and Profits of Lands Owned by Testator. Where there is nothing in the will which, in express terms, commands a conversion of testator's real estate into personalty as of the date of his death, and where upon the trial of an action, brought by the administrator with the will annexed, to compel a co-tenant of testator to account for and pay over the one-half part of the rents, income and profits received from a farm owned by such co-tenant and testator as tenants in common, no fact appears, or is found, which reveals any such situation at the time when the will was made as to support an implication that the testator intended such a conversion, such action cannot be maintained upon the grounds that the terms of the will had effected an equitable conversion of the testator's real estate into personalty and "that the converted fund became personal assets in the hands of the executor," including the rents and profits of the interest in the farm, and went to the plaintiff as administrator with the will annexed.

*Coann* v. *Culver*, 108 App. Div. 360, reversed.

(Argued January 30, 1907; decided February 26, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 3, 1905, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David N. Salisbury* for appellant. The legal title to the lands was not vested by the will in the executor therein named since no valid trust was created. It passed to the residuary devisees, and carried with it to them the right to possession and to receive the rents and profits. (*Steinhardt* v. *Cunningham*, 130 N. Y. 292; *Bouton* v. *Thomas*, 46 Hun, 6; *Konvalinka* v. *Schlegel*, 104 N. Y. 125; *Cooke* v. *Platt*, 98 N. Y. 35; *Chamberlain* v. *Taylor*, 105 N. Y. 185; *Clift* v. *Moses*, 116 N. Y. 144; *Mellen* v. *Mellen*, 139 N. Y. 210; 60 Hun,

151; *Mellen* v. *Banning*, 72 Hun, 176; *Parker* v. *Beer*, 65 App. Div. 598; 173 N. Y. 332; *Matter of Spears*, 89 Hun, 49.) To entitle Milton White's personal representatives to the rents and profits in question, his will must have effected an equitable conversion of such lands into money as of the date of his death. Such conversion was not established. (*Clift* v. *Moses*, 116 N. Y. 144; *Argall* v. *Pitts*, 78 N. Y. 242; *Lent* v. *Howard*, 89 N. Y. 169; *Asch* v. *Asch*, 18 Abb; [N. C.] 82; *White* v. *Howard*, 46 N. Y. 144; *Hobson* v. *Hale*, 95 N. Y. 588; *Scholle* v. *Scholle*, 113 N. Y. 261; *Matter of Cobb*, 14 Misc. Rep. 409; *Wright* v. *Trustees, etc.*, Hoff. Ch. 202.) The right to exercise the power of sale never vested in this plaintiff as administrator with the will annexed and he, therefore, derived no authority from it over the lands in question. (*Conklin* v. *Egerton*, 21 Wend. 430; 25 Wend. 224; *Franklin* v. *Osgood*, 14 Johns. 527; *Dominick* v. *Michael*, 4 Sandf. 374; *Roome* v. *Phillips*, 27 N. Y. 357; *Delaney* v. *McCormack*, 88 N. Y. 174; *Farrar* v. *McCue*, 89 N. Y. 139; *Eisner* v. *Curiel*, 2 App. Div. 522; *Cooke* v. *Platt*, 98 N. Y. 35; *Egerton* v. *Conklin*, 25 Wend. 224; *Dominick* v. *Michael*, 4 Sandf. 374; *Van Giesen* v. *Bridgford*, 83 N. Y. 348.)

*Sanford T. Church* for respondent. The administrator with the will annexed is entitled, as such, to the rents and profits of the real property in question. (Code Civ. Pro. § 2613.) The direction for the payment of the legacies constitutes a clear conversion of the realty into personalty, especially where, as in this case, the personal estate is insufficient to pay the debts and legacies. (*Dodge* v. *Pond*, 23 N. Y. 69; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Asch* v. *Asch*, 18 Abb. [N. C.] 82; *Salisbury* v. *Slade*, 160 N. Y. 278; *Mott* v. *Ackerman*, 92 N. Y. 539; *Greenland* v. *Waddell*, 116 N. Y. 663; *Bayne* v. *Mattison*, 54 N. Y. 663; *Royce* v. *Adams*, 123 N. Y. 402; *Ward* v. *Ward*, 105 N. Y. 68; *Lent* v. *Howard*, 89 N. Y. 169.)

Gray, J. Milton White, in his lifetime, owned with the defendant, by tenancy in common, certain farm lands and this

action was commenced by the plaintiff, as the administrator of White, with will annexed, to compel the defendant to account for, and to pay over, the one-half part of the rents, issues, income and profits received from the farm. Whether the plaintiff is entitled to maintain such an action, altogether, depends upon the terms of White's will. That instrument, in the first three of its clauses, after directing the payment of the testator's debts, gave pecuniary legacies to three persons. By the fourth clause the testator gave, devised and bequeathed all the rest, residue and remainder of his real and personal estate, in equal shares, to five cousins, naming them. The fifth clause then reads as follows: "I give and devise all my real and personal estate of what nature or kind soever, and wherever situate to Orange A. Eddy the executor of this my last will and testament, hereinafter nominated and appointed, in trust for the payment of my just debts and the legacies hereinbefore specified, with power to sell and dispose of the same at public or private sale, at such time or times, and upon such terms and in such manner, as to him shall seem meet and for the best interest of my estate; and I do hereby direct the payment of the legacies herein before named in full in the order herein named." By the subsequent provision of the will Eddy was appointed as executor. He died prior to the probate of the will and the testator, himself, had disappeared at some date prior to 1889. In November, 1889, the present plaintiff was appointed by the surrogate to be the temporary administrator of the estate and, upon an adjudication of White's death and the admission of his will to probate, received letters with the will annexed, in January, 1893. The referee, before whom this case was tried, gave judgment in favor of the plaintiff for one-half of the net profits of the farm; which the defendant had received from a certain date, when, under a written agreement, the farm was let by him, according to the referee's finding, to another to be worked on shares. His decision in favor of the plaintiff was based upon the conclusion that the terms of the will had effected an equitable conversion of the testator's real estate into personalty and

that "the converted fund became personal assets in the hands of the executor," including the rents and profits of the interest in the farm, and went to this plaintiff as administrator with the will annexed.

I think this conclusion was erroneous. In my opinion, under the provisions of this will the title to the testator's real and personal estate had vested in the five persons, to whom, in the fourth clause, he had given the residue and remainder of his estate; subject, only, to the exercise by the executor of the power of sale conferred upon him in the fifth clause. They, alone, were entitled to the rents and profits of the land and, if that be true, they, alone, were entitled to maintain such an action. It will be observed that none of the express trusts authorized by law was created by the terms of the fifth clause; for the gift in trust was for the payment of debts and legacies. The executor was not empowered to receive the rents and profits of the estate, nor was the power to sell imperative. He took no estate, but, simply, a power in trust to sell; discretionary in its exercise, as he might find it advisable to act. Our statutes, with the intent of restricting the cases where the vesting of titles may be suspended by trusts, have specified them and have provided for effect to be given to a testator's wishes, when directing other trusts, by validating his directions through powers in trust, when lawful. The persons, therefore, to whom White had devised his estate, were vested with the whole title thereto. It is not pretended that any charge upon the real estate in favor of the debts, or the legacies, was expressly created and the language of the will does not permit of the implication of any being intended.

That there was no equitable conversion of the real estate into personalty, as of the date of the testator's death, will be plain upon a consideration of the provisions of the will; to which the court is, wholly, confined. There is nothing in the will, which, in express terms, commands such a conversion and no fact appears, or is found, which reveals any such situation at the time when the will was made, as to support an implication that the testator so intended. The finding of the

referee, that the personal estate was insufficient to pay the debts and the legacies, can only have reference to the date when the plaintiff was appointed administrator. The date of the making of the will does not appear in the record. If we should accept the date as it was stated upon the argument, it was in 1872, or some seventeen years before the appointment of the plaintiff as temporary administrator of the estate. Nor does it appear that any debts were left by the testator, or that any creditors ever presented claims against his estate. We have no fact, or circumstance, suggestive of any lack of personalty at the time of the making of the testamentary dispositions. Confining ourselves, therefore, to the provisions of the will in order to discover the intention of the testator upon the subject, we find its provisions militate, in the most emphatic terms, against the idea of an equitable conversion of the whole estate into personalty. The testator has devised and bequeathed the residue and remainder of his real and personal estate, absolutely, to five persons named. That indicates the existence of the idea that his personal estate might more than suffice for the payment of debts and legacies. Afterwards he gives to his executor his real and personal estate, in trust for the payment of debts and legacies, and a power of sale, which may be resorted to by the executor to supplement from the proceeds of a sale of the real estate any possible deficiency in personalty, and he directs "the payment of the legacies herein named in full in the order herein named." The most rational interpretation of such a direction, in view of his previous gift of a residuary estate, is that if, when his estate came to be administered, the personalty proved insufficient to meet all of the legacies, it was to be applied to their payment, in the order given, and then resort was to be had to a sale of the realty. If the provisions of this will evidence the existence of a belief by the testator that he would leave personalty, ample for the payment of his debts and legacies, and that he was guarding against a possible insufficiency, by authorizing a sale of the real estate, it is plain that the amount, which would have to be sold would

be problematical and this militates against the testator's intend-
ing a general conversion. A sale of the realty was not
expressly directed and as nothing exhibits a situation where
it might be inferred to have been intended, such a direction
cannot be implied. The power to sell was, from every aspect
of this will, purely discretionary with the person he appointed
to be his executor.

My conclusion is that there was no change worked in the
nature of the real property by equitable conversion and that
it remained as such, until it was, in fact, sold under the power
of sale. The will in the case of *Clift* v. *Moses*, (116 N. Y.
144), was not unlike this one in its provisions and the decision
in that case bears quite closely upon the question we are con-
sidering. There the testator, first, directed the payment of
his debts and gave certain legacies and then left to his daugh-
ter the residue of his real and personal estate. After these
dispositions, he gave to his executors all his real and personal
property for the purpose of paying his debts and the legacies
named in his will; "giving them power to sell, mortgage or
convey any and all real estate for the purposes above named."
It was claimed that the real estate was converted into person-
alty for the purpose of paying the debts and legacies; but it
was held that "the power of sale was left entirely discretion-
ary with the executor" and that "there was no conversion
until the executor exercised the power and consummated the
sale." (See, also, *Matter of the Will of Fox*, 52 N. Y. 530,
537.)

There is, further, the objection that the plaintiff, being but
an administrator with the will annexed, was without capacity
to exercise the power of sale given by the will. Section 2613
of the Code of Civil Procedure, in providing that administra-
tors with the will annexed, shall "have the rights and powers
* * * as if they had been named as executors in the will,"
will not apply where the power of sale is discretionary, but,
only, when imperative. The power in this case was given to
Orange A. Eddy, who is described as thereinafter appointed
to be executor. The power was not annexed to the office of

executor; it was conferred upon a person selected by the testator, as a matter of personal confidence reposed in him. If the power was imperative in its nature, or was distinctively conferred upon the executor as such, it would then pass to an administrator with the will annexed. (*Mott* v. *Ackerman,* 92 N. Y. 539; *Cooke* v. *Platt,* 98 ib. 35.) The power being discretionary, whether, the donee having died, it survived in the Supreme Court and could be executed, if necessary, by its appointee for the purpose, it is unnecessary for us to decide at present. The question may be an open one. (See *Cooke* v. *Platt, supra; Royce* v. *Adams,* 123 N. Y. 402, 405.) The right to maintain an action of this nature against this defendant resided, only, in those persons, in whom the legal title to the lands had vested. The sole purpose of the action, as disclosed by this complaint, is to enforce against him a liability to account for the half of the rents and profits, which he had received under the agreement for the working of the farm lands.

The conclusion reached renders it unnecessary to consider the other questions raised, as to the construction of the agreement which the defendant made for the working of the farm. Whether it was, as the referee appears to have found, a lease thereof, under which a third person was in possession paying rent, or profits, or whether the defendant remained in possession thereof and farmed it through an employé, might be a debatable question.

For the reasons given, I advise the reversal of the judgment appealed from and that a new trial be ordered, with costs to abide the event.

Cullen, Ch. J., Haight, Vann, Werner, Willard Bartlett and Chase, JJ., concur.

Judgment reversed, etc.