LOUIS F. HOLLENBACH, as Agent and Attorney, Plaintiff, *v.* GEORGE H. BORN, Defendant.

Second Department, November 9, 1923.

**Executors and administrators — discretionary power of sale was given to executors — administrator with will annexed, appointed in 1923, can convey marketable title to defendant — Surrogate's Court Act, § 225 (formerly Code of Civil Procedure, § 2695), giving administrator with will annexed power to execute discretionary power of sale, is applicable to estates in process of administration when said provision was enacted.**

The last sentence of section 225 of the Surrogate's Court Act, enacted in 1914 as a part of section 2695 of the Code of Civil Procedure, which changed the rule that a discretionary power of sale given to an executor could not be exercised by an administrator with the will annexed, by providing that where a power of sale is given by a will to an executor an administrator with the will annexed may execute such power in any case where the original executor could execute the same, unless contrary to the express provisions of the will, is applicable to estates in process of administration at the time of its enactment.

Accordingly, the plaintiff, appointed in 1923 as administrator with the will annexed of an estate which was in process of administration in 1914, who contracted to sell to the defendant certain land belonging to the estate, can convey a good and marketable title under a discretionary power of sale given to the executors.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 546 of the Civil Practice Act.

*Louis F. Hollenbach,* for the plaintiff.

*Frederick C. Lawyer,* for the defendant.

YOUNG, J.:

The statement shows that on October 19, 1900, August C. Diestelhorst died seized in fee of certain property in the borough of Brooklyn. He left a will which was probated on March 28, 1901, which, after directing the payment of debts, etc., and bequeathing all his personal estate to his adopted daughter, devised all his real estate to her for life, and upon her death devised the same to her lawful issue. The will appointed his friends Charles Kelbe and Adolph Droste executors, gave them or their survivors " full power and authority to sell and dispose of my real estate, or any part thereof, at such times and in such manner as they may deem best, and to give good and sufficient deed or deeds of conveyance therefor. It is my will and intention, however, that the proceeds of any sale made pursuant to the above power shall be deemed and considered to be real estate."

The will is dated May 3, 1887. By a codicil dated June 18, 1898, he appointed Samuel T. Maddox executor in the place of Adolph

Droste, deceased. Charles Kelbe, the other executor, is also dead. On February 9, 1923, letters of administration with the will annexed of said decedent were issued to Irma Hauptmann Warmber and Louis F. Hollenbach, the sole executor, Samuel T. Maddox, having died leaving the estate unadministered. Thereafter Louis F. Hollenbach, as agent and attorney for himself and Irma Hauptmann Warmber, as administrators c. t. a. of the decedent, contracted to convey to the defendant a good and marketable title to the premises in question, and the defendant agreed to purchase it and pay the stipulated price. Defendant has rejected the title as unmarketable for the reason that under the will of the testator the power of sale given to the executors was merely discretionary; that no equitable conversion was effected, and that plaintiff's principals as such administrators c. t. a. did not succeed to and were not vested with the power of sale given to the executors, and that he is entitled to recover back the $1,000 down payment on signing the contract. The controversy is whether upon these facts plaintiff is entitled to judgment directing defendant to complete his purchase or whether defendant is entitled to judgment that the title is unmarketable and to recover back the deposit.

The power of sale contained in this will is obviously merely discretionary and not imperative, and prior to the revision, by chapter 443 of the Laws of 1914, of chapter 18 of the Code of Civil Procedure, relating to surrogates' practice, it was well settled that a discretionary power of sale does not pass to and may not be exercised by an administrator c. t. a. (*Williams* v. *Williams*, 152 App. Div. 323; *Coann* v. *Culver*, 188 N. Y. 9); but upon the revision of the Code as to surrogates' practice, the following paragraph was added as part of new section 2695 of the Code of Civil Procedure: " Where power to mortgage, lease or sell real estate is given by a will to an executor or trustee, an administrator with the will annexed or a successor trustee may execute such power in any case where the original executor or trustee could execute the same, unless contrary to the express provisions of the will." In the revisers' note to this section it is said: " The last sentence added to change the confusion arising from the many cases holding that a discretionary power of sale does not pass to an administrator c. t. a. or successor trustee." This section was carried into the Surrogate's Court Act as section 225.

It is contended by the plaintiff that by virtue of this section, the administrators with the will annexed were vested with the power of sale contained in the will, and that, therefore, the deed tendered to the defendant conveyed a good and marketable title. On the other hand, it is urged by defendant that this section had

no retroactive effect, and that the discretionary power of sale contained in the will did not pass to the administrators with the will annexed. No cases are cited upon either brief which decide this question, and I have been unable to find any direct authority upon the subject. Defendant invokes the doctrine that statutes have no retroactive force without express words to that effect. This, of course, is the general rule in the construction of statutes, but there are exceptions to that rule. Thus, in *People ex rel. Witherbee* v. *Supervisors* (70 N. Y. 228) it was held that the occasion of the enacting of a law may be looked to to assist in determining its character as retroactive or prospective. In that case, owing to a dispute as to a boundary line, real estate was assessed in two towns, and the court held that proceedings by mandamus might be maintained against the board of supervisors of the county to compel it to ascertain and determine the amount which the person assessed was entitled to receive back and from which of the towns, pursuant to chapter 119 of the Laws of 1873. The assessments in question were for the years 1865–1870 prior to the enactment of the statute in question. The court said (pp. 236, 237): " The language of the act is, in a sense, retroactive. ' To ascertain, fix and determine the amount to which any * * * person * * * is equitably entitled to receive back from any town.' It speaks in the present tense, and in the present gives power to the supervisors to act on a case in the present existing; and as a case, though in the present existing (that is, when the statute was enacted), may have, and in many instances must have, existed before the statute, it does retroact to take in that case. We may look to the occasion of the enactment of a law, to assist us in determining its character as retro- or pro-spective. (*People* v. *Suprs. Columbia Co.*, 43 N. Y. 130.) It is easy to perceive that the enactment before us arose out of a real or supposed necessity, existing at the time of its passage, for an easy remedy, and an accessible tribunal already charged with similar duties, so that speedily and conveniently and inexpensively the questions involved in such a case as this might be determined. It was for cases then existing at the time the statute was made that it was passed, as well as for those to occur thereafter."

In *People ex rel. Collins* v. *Spicer* (99 N. Y. 225) the court said (p. 233): " This act, like all other statutes, should be so construed as to give effect to the intention of the law-makers, and if its plain meaning requires that it should be given a retroactive effect, and neither vested rights, existing contracts nor causes of action are thereby destroyed, no reason or rule of construction prohibits it. The general rule, which, in the absence of express language authorizing retroaction, requires a statute to be so construed as to have

a prospective effect only, is not, except as to a certain class of statutes, an inflexible one. It is said in 1 Kent's Commentaries, 455, that ' This doctrine is not understood to apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts, or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects, and adding to the means of enforcing existing obligations.' Legislation of this character is of frequent occurrence in this State, and when restrained within proper limits is of great public benefit and convenience."

In *People ex rel. Gabriel* v. *Warden, etc.* (109 Misc. Rep. 248) Mr. Justice CROPSEY held that the statute (Laws of 1919, chap. 410) which provides for calculating a term of imprisonment, though in form amending section 2193 of the Penal Law, is entirely new, and as it affects no vested rights, it will, in the interests of justice and plain language, be held to be retroactive in operation and applicable to all convicts. The statute in question was as follows: "Any time spent by a person convicted of a crime in a prison or jail prior to his conviction and before sentence has been pronounced upon him, shall become and be calculated as a part of the term of the sentence imposed upon him, whether such sentence is an indeterminate one or for a definite period of time; and such time shall, in addition to the time allowed for good conduct and earned as compensation, be deducted from the term of the sentence so imposed, under the provisions of article nine of the Prison Law."

The relator in the *Gabriel* case was confined under a sentence of one year, but if the time spent in jail awaiting trial had been deducted from the term of his sentence, he would have been entitled to his discharge. The respondent contended that the statute had merely a prospective effect and applied only to prisoners convicted after it became a law, but Mr. Justice CROPSEY held the contrary, citing numerous cases.

In my opinion, section 225 of the Surrogate's Court Act is plainly within the doctrine laid down in the above authorities. That section is clearly a remedial statute. As stated in the revisers' note above quoted, it was intended to avoid the confusion arising from decisions holding the contrary. A real necessity for its enactment had arisen. No contract was impaired or vested rights disturbed, and in my opinion it was intended to apply to existing conditions as well as to similar conditions which might thereafter arise. Its only retroactive effect is its application to a will which was in process of administration at the time of the enactment. This does not seem to me to be the true test. In my opinion, the statute could only have retroactive effect where it was attempted

to apply it to a sale sought to be made by an administrator c. t. a. prior to the enactment of the statute under a discretionary power of sale contained in the will. But no such question is presented, nor is any such claim made.

My conclusion is that the last paragraph of section 225 of the Surrogate's Court Act above quoted was intended to apply to administrators with the will annexed appointed in estates in process of administration at the time of its enactment where the will contained a discretionary power of sale.

The plaintiff is, therefore, entitled to judgment directing defendant to complete his contract, and pay the balance of the purchase money on receiving a deed of the premises from plaintiff's principals, without costs.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and YOUNG, JJ.

Judgment unanimously directed in favor of the plaintiff, in accordance with opinion, without costs.