ALAIN C. WHITE, as Substituted Trustee under the Will of LUCY A. MORRIS, Deceased, Plaintiff, *v.* ALAIN C. WHITE, as Ancillary Executor of LUCY A. MORRIS, Deceased, et al., Defendants.

Supreme Court, Special Term, New York County, November 21, 1949.

*Eugene Blanc* and *Dorothy S. McCrea* for plaintiff.

*Thomas S. Rothwell* for Margaret P. Poole and others, defendants.

*Alfred H. Hetkin* for Alain C. White and others, as executors of Lucy A. Morris, deceased, and others, defendants.

ISIDOR WASSERVOGEL, Official Referee. Plaintiff, as substituted trustee, seeks a construction of the trust created by the will of Lucy Augsburg Morris, who died domiciled in England on April 6, 1943.

The testatrix left surviving her two children, Arthur Le Blanc Grant Morris and Margaret Picton Poole, Inda Mary Daphne Morris, the wife of a predeceased son, Geoffrey Grant Morris, and their two children, June Veronica Grant Morris and Stella Mary Grant Poole.

The will of the testatrix and a codicil thereto were duly admitted to probate in England as a will of both real and personal property in His Majesty's High Court of Justice, Probate, Divorce and Admiralty Division. The testatrix appointed three executors. At the time of her death, however, her son Arthur Le Blanc Grant Morris, one of such executors, was in a foreign country with the British Army and, therefore, could not qualify. Likewise, her brother, Alain Campbell White, also named as an executor, an American citizen domiciled and residing in the United States, was unable to qualify. Arthur James Poole, a son-in-law of the testatrix, was the sole nominee to qualify and was appointed executor in England. A duly authenticated copy of the will and codicil and of the decree of the English Court was filed in the Surrogate's Court, New York County, and, by decree of such court, dated October 13, 1943, ancillary letters testamentary were issued to Alain Campbell White, who duly qualified and is presently acting as ancillary executor of the will of the decedent.

The testatrix appointed two trustees in her will, her son Arthur Le Blanc Grant Morris and her son-in-law Arthur James Poole. Poole, alone, qualified. He was, however, not a resident of this country, but was domiciled in England. Inasmuch as part of the residuary estate of the testatrix consisted of real property located in New York County, it became necessary to appoint a substituted trustee to carry out the unexecuted trusts, pursuant to sections 111 and 112 of the Real Property Law. On consent of all the parties involved, by order of the Supreme Court, New York County, dated March 1, 1948, Alain Campbell White was appointed substituted trustee. He duly qualified to act as such and commenced the instant action.

The estate of the testatrix includes, in addition to various items of personal property, an undivided five-sixteenths interest in each of three parcels of real estate in New York County, located at 120th Street and Claremont Avenue, 560 Fifth Avenue, and the property known as the Medical Arts Building at 57 West 57th Street. The legal title to such interests, by virtue of the general devise to executors set forth in the will of the testatrix, is vested in the ancillary executor. Pursuant to the discretionary powers given to him by paragraph 12 of the will, and with the concurrence of all the parties concerned, in furtherance of the expressed intent of the testatrix to divide her estate equally, the ancillary executor allocated one third of the five-sixteenths interest in the real estate to that share of the estate devised to the testatrix' son, Arthur Le Blanc Grant Morris, absolutely, one third of the five-sixteenths interest to the share of the estate devised to the testatrix' daughter, Margaret Picton Poole, absolutely, and the remaining one-third share to the trust of which plaintiff is substituted trustee.

The complaint herein asks judgment declaring the trust and the power of sale granted to the trustee by the terms of the will to be valid. It then asks, in the alternative, that if the trust be adjudged to be invalid, the court declare which of the persons are distributees of the estate of the testatrix and, as such, are entitled to take her interest in the real estate in the event that such invalidity creates an intestacy with regard to the real property. Finally, the complaint asks that the court determine whether the power of sale set forth in the will effects an equitable conversion of the realty into personal property.

The answers of the defendants admit all the factual allegations of the complaint. The defendant, Inda Mary Daphne Morris, life tenant of one quarter of the income of the trust, denies the invalidity of any part of the trust, and, as she would otherwise take nothing under its provisions, asks affirmatively that the entire trust be declared valid. The answers of Margaret Picton Poole and Arthur Le Blanc Grant Morris, while asking that the trust be held valid in order to effectuate their mother's expressed wishes, nevertheless request that their interests as distributees be declared and fixed in the event that the court shall hold otherwise and that, in any event, each be declared absolute owner of one third of testatrix' five-sixteenths interest. The answers of the two grandchildren ask that the trust be declared valid and that their interests in three quarters of the income and in all of the principal be established. They further ask that in the event that an intestacy result from a possible adverse decision by

the court as to them, they be declared as among those persons entitled to share in that portion of the estate of the decedent.

The first question to be determined is whether the power of sale contained in the will of the testatrix has worked an equitable conversion which, in effect, makes this a trust of personalty. In such event, the laws of England, the domicile of the testatrix, would govern the distribution of the property though it be situated in the county of New York. Whether an equitable conversion has been achieved by a direction to sell is, however, a question which must be determined by the laws of New York (Restatement, Conflict of Laws, § 244; Decedent Estate Law, § 47).

As part of the general devise and bequest of the residuary estate to the executors, the will of the testatrix provided: " They shall sell call in collect and convert into money my said real and personal property at such time or times and in such manner as they shall think fit with power to postpone the sale calling in or conversion of the whole or any part or parts of said property during such period as they shall think proper and to retain the same or any part thereof in its present form of investment without being responsible for loss."

The will also gave the trustees " power to vary or transpose such investments for and into others of a nature hereinabove authorized provided always that the trustees may retain any investment transferred to them by the executors or any part thereof in its then form without being responsible for loss."

The fundamental principle that equity regards that as done which should be done underlies the doctrine of equitable conversion (4 Pomeroy on Equity Jurisprudence [5th ed.], § 1159). As above stated, an equitable conversion of the land involved would change the nature of such property to personalty, which would thereafter be descendible as personal property for all purposes (*Matter of Earnshaw,* 196 N. Y. 330; *Greenland* v. *Waddell,* 116 N. Y. 234). The entire scope of the doctrine is based upon the existence of a duty resting upon the executor, trustee, or other party to perform the specified act. No express declaration in the will is required that the land shall be treated as personalty although it has not actually been sold. The will, however, must contain an *absolute and unequivocal* expression of an intention that the land *shall* be sold and converted into money. If such intention is sufficiently expressed, the fact that the land has not yet been sold and turned into money is the very condition upon which this equitable doctrine and its underlying principle come into force. It is well established that in order to work a conversion while the property is yet actually unchanged

in form, there must be a clear, imperative, and valid direction, express or implied, to convert the land to personalty. If the act of selling the real property is left to the option, discretion, or choice of the executor, trustee, or other party, then no equitable conversion will take place, as no duty rests upon such parties to make the change (*Coann* v. *Culver,* 188 N. Y. 9; *Power* v. *Cassidy,* 79 N. Y. 602; 4 Pomeroy on Equity Jurisprudence [5th ed.], § 1160, *et seq.*).

Thus the test to which the will involved must be put is a simple one — has the testatrix absolutely and unequivocally made a valid direction that the real estate be sold? There is no doubt as to the validity of the expressed desire of the testatrix to have either the executors or trustees sell the property. In the opinion of the court, however, such intention falls far short of being an absolute and imperative direction to convert such property. The will authorizes the executors to sell the property " at such time or times  *  *  *  as they shall think fit," or " to postpone the sale  *  *  *  during such period as they shall think proper ". The executors, in the exercise of their discretion, may never deem it a propitious time to dispose of the real estate and may postpone its sale indefinitely. Furthermore, the will permits the executor to retain any property " in its present form of investment ". If the executors fail to sell the real estate and transfer the property, as such, to the trustees, the latter, by the terms of the will, are empowered to " retain any investment transferred to them by the executors  *  *  *  in its then form without being responsible for loss." It is thus clearly evident that the testatrix has not placed a mandatory obligation upon her fiduciaries to sell the real estate. I hold, therefore, that as the act itself of selling the real estate was left to the absolute discretion and choice of the executors and/or the trustees, no equitable conversion of the property can take place (*Coann* v. *Culver, supra; Ray* v. *Fowler,* 200 App. Div. 155, 162, 163: *Matter of Van Zandt,* 142 Misc. 663, 666).

In order to determine the validity and effect of the trust as one of realty under the laws of this State, it is necessary to examine the English law and the customs and usages of that country for the purpose of ascertaining what was in the mind of the testatrix when she created certain trusts by reference to an English statute (*Matter of Garfunkel,* 71 N. Y. S. 2d 693, 695).

The trust with respect to the one-quarter share of the income thereof, as set forth in paragraph 10 of the will provides: " Upon Trust to hold one quarter of the annual income thereof. Upon the statutory protective trusts for the benefit of the said Inda

Mary Daphne Morris the wife of the said Geoffrey Grant Morris during her lifetime ''.

The statutory protective trusts mentioned in the aforesaid provision of the will are based upon section 33 of the English Trustee Act of 1925 (15 Geo. V, ch. 19). In light of such statute, the effect of the bequest of paragraph 10 of the will gave Inda Mary Daphne Morris the right to receive one quarter of the share of the annual income from the real estate for her life, reserving the right to deprive her of such income in the event of the occurrence of certain contingencies. Such contingencies are provided for in paragraph (i) of subdivision (1) of section 33 of the English statute. In the event of such an occurrence taking place, as, for example, a creditor under a judgment attempting to reach the income, the trust for Inda Mary Daphne Morris, though expressed for life, would terminate. The trustees thereafter would, at their absolute discretion, apply the one-quarter share of the income for the benefit of this named beneficiary during the remainder of the trust period or, at their option, for the benefit of her husband, or children, or grandchildren. This discretionary trust must, in any event, terminate at the death of the named principal beneficiary, just as the trust itself would terminate at her death with none of the contingencies provided for by the English statute actually occurring.

The remaining three quarters of the income of the trust is not disposed of directly by the specific provisions of the will, and must be examined by application of the British common law and of section 175 of the English Law of Property Act of 1925 (15 Geo. V, ch. 20). Expert testimony adduced at the trial established that under the applicable English law the grandchildren of the testatrix have an equitable interest in the three-quarter share of the income, contingent upon their attaining their majority, or being female, their earlier marriage. In the event of either contingency, the interest of the child entitled to receive the share of the income becomes vested. If either of the children should predecease the occurrence of any of the aforesaid contingencies, then the remainder interest of the survivor is enlarged. In the event both of the grandchildren die during the life of Inda Mary Daphne Morris, there would be a resulting trust to the testatrix' estate. In order to determine the validity of the trust in the light of the above-stated applicable English law, it is of advantage to set forth its provisions as if it had been contained in a New York will under the applicable law of this State. Such trust would provide:

" I give, devise and bequeath my residuary estate to my trustees, In Trust, Nevertheless, to collect the rents, issues, income and profits thereof and to dispose of the income and principal thereof as follows:

" (1) During the life of my daughter-in-law, INDA MARY DAPHNE MORRIS (hereinafter referred to as ' Inda '), to pay to her, or to apply to her use, one quarter of the income either until she dies, or until, during her life, she should do or attempt to do, or suffer, any act or thing, or until any event should happen, whereby she would be deprived of the right to receive said income or any part thereof (Trustee Act of 1925, § 33, subd. [1], par. [i]).

" (2) From and after the happening of any of the foregoing events (except the death of Inda), to apply said one quarter of the income to the use of the following persons, or any one or more of them, at such times, and in such shares, equal or unequal, as my trustees, in their sole and absolute discretion, may from time to time think fit, to wit: (Trustee Act of 1925, § 33, subd. [1], par. [ii])

(a) Inda, her husband, if any, or any issue of Inda (Trustee Act of 1925, § 33, subd. [1], par. [ii], cl. [a]);

(b) Inda and the persons who would be entitled to the same if she were actually dead if, at any time, during the life of Inda, there should be no husband or any issue of hers living. (Trustee Act of 1925, § 33, subd. [1], par. [ii], cl. [b].)

" (3) During the life of Inda, to pay the remaining three quarters of the income to, or apply the same to the use of, the children of my son Geoffrey, in equal shares. If any such child being male should die prior to attaining twenty-one, or any such child being female should die prior to attaining twenty-one, without having theretofore married, then the entire three quarters of the income shall be paid to, or applied to the use of, the surviving children of my son Geoffrey and the executors or administrators of any such children, who being male should have died after attaining twenty-one, or being female should have died after attaining twenty-one, or after having married prior thereto, in equal shares. (Law of Property Act of 1925, § 175.)

" (4) Upon the death of Inda, to divide the principal of the trust fund into so many equal shares that there shall be one for each child of Geoffrey, who shall have survived Inda, and one for each child of Geoffrey who shall have predeceased Inda, but being male shall have attained twenty-one, or being female shall have attained twenty-one or sooner married and to dispose of such shares as follows:

" (a) Pay each share so set apart for any such deceased child to the executor or administrator of such deceased child.

" (b) Pay over absolutely each share set apart for each surviving child who, at Inda's death, shall have attained twenty-one, or being female shall have sooner married, to such child.

" (c) If any surviving child of Geoffrey shall not, at Inda's death, have attained twenty-one, or being female shall not have married prior thereto, my trustees shall hold the share set apart for each such child until such child being male shall attain the age of twenty-one, or being female shall attain such age, or sooner, marry, meanwhile in their sole discretion paying to the parent or guardian of such minor or applying for his maintenance, education or benefit, so much of the income as they deem reasonable in the circumstances of the case. They shall accumulate and invest the residue of such income, if any, and upon such child's attaining twenty-one, or being female sooner marrying, my trustees shall pay over to such child the principal of the share so held, together with all the accumulated income thereon. If any such child shall not attain twenty-one, or being female sooner marry, then to divide the share so held for such child together with all accumulated income thereon equally among all others for whom a share was set apart at Inda's death. (Trustee Act of 1925, §§ 31, 32.) "

The foregoing are the provisions of the trust of the testatrix if such instrument had been drawn in the language commonly used in trusts which prevail in this State. The factors which are relative to the determination of the validity of such trust involve the purpose for which it was created, the duration of the trust, the rule against perpetuities, the possible alienability of the life interest, accumulations, the remainder interests, and the rights of creditors thereunder. Accordingly, the trust involved must be examined by the court and tested against each of these criteria necessary to establish its validity under the laws of New York (*Matter of Turner,* 195 Misc. 331, 335).

Section 96 of the Real Property Law classifies and groups together the only purposes for which trusts may be created. Subdivision 3 thereof permits a trust to exist in order " to receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term ". Subdivision 4 of said section authorizes the creation of a trust " to receive the rents and profits of real property, and to accumulate the same for the purposes, and within the limits, prescribed by law."

It is not necessary that the instrument creating the trust contain the very words of the statute. The general rule is that words which are sufficient to constitute an express trust authorized by the statute should be given that effect (*Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; *Matter of Ayre,* 76 N. Y. S. 2d 897). It is sufficient if a purpose within the statute is embraced either expressly or impliedly in the language used in the instrument. A court of equity will look to the intent of the settler and such intention will be carried out insofar as it is not inimical to the public policy of this State (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Donovan* v. *Van De Mark*, 78 N. Y. 244; *Steinway* v. *Steinway,* 163 N. Y. 183; *Glanckopf* v. *Guaranty Trust Co.*, 274 App. Div. 39; *Kornfeld* v. *Mode,* 78 N. Y. S. 2d 847; *Matter of Ayre, supra*).

The trust of both the one-quarter share of the income for the benefit of Inda Mary Daphne Morris and of the three-quarter share of the income for the benefit of the grandchildren of the testatrix are obviously created for the purpose of receiving rents and applying them to another's use during the life of that person. The provisions of the trusts relating to accumulations, as established by application of sections 31 and 32 of the English Trustee Act of 1925 are within the scope of subdivision 4 of section 96 of the Real Property Law. I hold, therefore, that the purposes for which the trust involved was created comply with the applicable provisions of the laws of this State.

It is evident from the language of the instrument creating the trust that it must terminate on the death of Inda Mary Daphne Morris. Likewise, section 33 of the Trustee Act of 1925 clearly sets forth that under any circumstances the death of Inda Mary Daphne Morris constitutes the terminal date of the trust. There is no possibilty of the trust extending beyond that period. In the event none of the contingencies anticipated in the English statutory protective trust provisions should occur, the life interests ends at her death by the very terms of the will. If any of these contingencies should occur, which in effect establishes an alternative discretionary trust under the English statute, such trust is likewise measured by the life of Inda Mary Daphne Morris. The corpus of the trust will have already been vested absolutely in those children who have attained their majority. The remaining children will have a contingently vested interest with payment to them postponed only during their minority. The entire trust and all payments thereunder are thus completed within the measurement of one life and a possible minority thereafter. Furthermore, as the limitation over is to the chil-

dren of Geoffrey Grant Morris, who has predeceased the testatrix, this class was closed on her death. I hold, therefore, that the trust does not impose any unlawful restraints on alienation. It comes within the recognized rule against perpetuities.

Section 103 of the Real Property Law expressly prohibits the transfer by assignment or otherwise of the right of a beneficiary of an express trust to receive rents and profits of real property. This section is contrary to the common law and, therefore, must be strictly construed (*Matter of Fowler*, 263 App. Div. 255, affd. 288 N. Y. 697, reargument denied 289 N. Y. 756; *First Nat. Bank of Paterson* v. *National Broadway Bank*, 156 N. Y. 459). The trust involved, though created in England must necessarily come within this edict of our Legislature in order for this court to determine its validity (*Matter of Jarvie*, 73 N. Y. S. 2d 246; *New England Trust Co.* v. *Wilcox*, 41 N. Y. S. 2d 527, affd. 267 App. Div. 976; Restatement, Conflict of Laws, § 243). The evidence before me clearly shows that the interest of the life tenant, which is created by reference to the English statute, would not be alienable by her. The interests of the grandchildren in the three-quarter share of the income of the real estate located in New York are likewise inalienable and are governed by section 103 of the Real Property Law. I hold, therefore, that these provisions of the trust comply with the Real Property Law of this State.

The law of New York forbids an accumulation of either rents, profits, or income except in the manner and for the period of time specified in the statutes (*Matter of Nesmith*, 140 N. Y. 609). Under the trust here involved and by application of the English Trustee Act of 1925, the trustees might accumulate the income for the benefit of the children of the sons of the testatrix who are minors, but such accumulations could not possibly continue beyond the minority of such children. In the event of the death of one of the minors before he attained his majority, the accumulations would devolve upon the survivors and not become part of the estate of the deceased minor. This is in complete accord with the laws of New York (Real Property Law, §§ 61, 61-a; Personal Property Law, §§ 16, 16-a; *Matter of Mangini*, 178 Misc. 500).

Three possible contingencies exist which would affect the interest of the grandchildren in the three-quarter share of the income. All these children may reach their majority or marry, a part of this class may reach their majority or marry, the remaining children dying prior to reaching their majority or

their prior marriage; or all of the children may die prior to their majority or marriage. The first two contingencies are covered under the provisions of the trust, but there is no provision for the disposition of the three-quarter share of the income if none of the children reach twenty-one or marry prior thereto. In the event of such occurrence, the income from this share of the corpus reverts to the estate of the testatrix. The trust, however, will nevertheless continue for the purpose of paying the life tenant her one-quarter share of the income for the duration of her life.

A similar contingency is not provided for with respect to the interests in the corpus of the trust. Nothing in the will or in any of the provisions of the English statutes governs the disposition of the corpus of the trust in the event that all of the grandchildren die prior to any of them having attained their majority, or being female, having sooner married, whether before or after the death of the life beneficiary. In such event the corpus of the trust would then revert to the estate of the testatrix.

The failure to name an ultimate remainderman in the two situations above stated results in an intestacy with respect to those parts of the trust fund so affected. The distributees of such parts of the trust as would revert to the estate of the testatrix include her son, her daughter and her grandchildren. I hold, however, that such failure and the resulting intestacy are not vital to the existence of the trust as a whole nor is the trust in its entirety or any prior limitations created thereunder invalid.

The final test to which the validity of the trust must be put involves its effect on the rights of the creditors of the life beneficiary. Under the English statute, the trust of the one-quarter share of the income for the benefit of Inda Mary Daphne Morris terminates when her creditors seek to deprive her of it. As above stated, her absolute right to receive the income in the future would, under the applicable English Law cease, when a creditor sought to enforce his rights, under paragraph (ii) of subdivision (1) of section 33 of the Trustee Act of 1925. The trust would then become a purely discretionary one similar in nature to a spendthrift trust in this State. The future income would be distributable under such English statute in the sole discretion of the trustees among a class of which the life beneficiary would be a member.

The public policy of New York with regard to the rights of creditors to reach the income of a life beneficiary of a trust is set forth in section 98 of the Real Property Law and section 684 of the Civil Practice Act. The former limits the rights of creditors to the trust income " beyond the sum necessary for the education and support of the beneficiary ". The latter permits a creditor to reach the income from trust funds in the amount of $15 or more per week, but restricts levy against such income to not more than 10% thereof.

The restraint on alienation of the right to income from trusts represents a declaration of the public policy of this State with the purpose of enabling the testator to protect the beneficiary of trust income from his own improvidence (*Matter of Caswell,* 185 Misc. 599, affd. 269 App. Div. 809). The discretionary trust created by the English statute is valid under the laws. of New York, and the spendthrift feature of the statutory protective trust is, therefore, no objection to the legality of the trust of the one-quarter share of the income for the benefit of Inda Mary Daphne Morris (*Hamilton* v. *Drago,* 241 N. Y. 401; *Siemers* v. *Morris,* 169 App. Div. 411).

There are no restrictions either in the will or by the application of any English statute with respect to the remaining three-quarter share of the income. Nothing in this part of the trust, therefore, offends the public policy of New York as it relates to the rights of creditors and such share need not be further discussed.

As all the incidents relating to the validity of a trust are fully complied with by the trust here involved, I hold that the testamentary devise in the case at bar is valid as a trust of realty. I further hold that as both of the grandchildren of the testatrix have now reached their majority, their interests have vested absolutely. As to the remaining two-thirds share of the interest of the testatrix in the New York real estate, I hold that her son and daughter, each owns, absolutely, one half of such remaining interest.

The power to sell property must be found expressly or impliedly in the instrument creating the trust and does not otherwise exist except with the sanction of the court in order to carry out the purposes of the trust (4 Pomeroy on Equity Jurisprudence [5th ed.], § 1060 e). A power of sale will be implied whenever a trustee is directed to do something, the doing of which can be accomplished only by a sale of the property (*Guaranty Trust Co.* v. *United States Steel Corp.,* 107

Misc. 720). As the executors herein have the power to distribute, and the trustees the power to take, in kind, upon a trust to sell and convert into cash at their discretion, it necessarily follows that the trustees have a power of sale. There is no doubt that under the terms of the will the ancillary executor has title to all the real estate of the testatrix by reason of the specific devise and he can sell the same instead of turning the property over in kind to the trustees. However, should the substituted trustee receive the real property (or any part thereof) as such from the executors, I hold that he has and may validly exercise the power of sale, and shall hold and distribute the proceeds thereof and the income received therefrom in accordance with the court's construction of the trust.

Judgment may be entered accordingly. Submit decree within ten days on three days' notice.

The foregoing are the facts found by me and constitute the decision of the court as required by section 440 of the Civil Practice Act.