J. Eugene Goldberg, et al. [1] v. Commissioner. Goldberg v. Commissioner
Docket Nos. 64863, 64876, 64890.
United States Tax Court
T.C. Memo 1959-88; 1959 Tax Ct. Memo LEXIS 161; 18 T.C.M. (CCH) 405; T.C.M. (RIA) 59088; April 30, 1959
*161 Held, certain payments received by petitioner Faye B. Goldberg from the estate of William Barrett, deceased, are taxable as community income to petitioners in 1948 and as separate income to petitioner Faye B. Goldberg in 1949, 1950, and 1951; certain deductions for contributions and automobile expenses are determined., the inclusion by respondent of certain amounts of interest in the community income of petitioners for each of the years here involved is disapproved; and no part of any of the deficiencies herein is due to fraud with intent to evade tax. James Evert Denebeim, Esq., 111 Suter Street, San Francisco, Calif., and Bruce K. Denebeim, Esq., for the petitioners. Charles W. Nyquist, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: In these consolidated proceedings the respondent determined deficiencies in income tax and additions to the tax under sections of the Internal Revenue Code of 1939 [2] for calendar years as follows: Additions to the Tax
Defi- § 293 § 294 § 294
Year
ciency
(b)
(d)(1)(A)
(d)(2)
J. Eugene Goldberg, Docket No. 64863
1948
$ 30.00
$ 15.00
0
0
1951
46.48
50.69
$ 7.44
$ 4.36
J. Eugene Goldberg and Faye B. Goldberg,
Docket No. 64876
1949
$ 93.70
$164.06
$15.00
$ 6.77
1950
54.24
147.15
16.52
9.92
Faye B. Goldberg, Docket No. 64890
1948
$149.00
$ 74.50
$14.96
$ 8.98
1951
130.78
95.31
37.04
22.23
*162 Some of the issues have been settled by stipulation and effect will be given thereto under Rule 50. Those issues remaining for determination are (1) whether any portion of the income of the estate of William Barrett, deceased, is taxable to petitioners in the years 1948 through 1951; (2) whether the respondent erred in disallowing a part of the amounts deducted as contributions in the returns filed for 1949, 1950, and 1951; (3) whether the respondent erred in disallowing a part of the amounts deducted as automobile expense in the returns filed for 1948 and 1949; (4) whether the respondent erred in including in petitioners' community income for each of the taxable years interest on Connecticut Mutual Life Insurance Company Policy No. 523560; (5) whether any part of the deficiencies is due to fraud with intent to evade tax; (6) whether the deficiencies and additions to the tax for the years 1948 and 1949 are barred by the statute of limitations; and (7) whether the respondent erred in determining the above-mentioned additions to the tax under section 294(d). Counsel for petitioner *163 J. Eugene Goldberg, in Docket No. 64863, has conceded all issues of tax liability for 1948, thus leaving as the sole issue in that proceeding whether any part of the deficiency for 1948 of $30 is due to fraud with intent to evade tax. Counsel for respondent has conceded that the deficiency determined against each of the petitioners for 1948 is barred by the statute of limitations in the absence of fraud, and that the joint deficiency for 1949 of $93.70 is barred in the absence of fraud or a 25 per cent omission from gross income. Findings of Fact The several stipulations of facts and the suppemental stipulation of facts are found as stipulated. Petitioner J. Eugene Goldberg (hereafter sometimes referred to as Eugene) and petitioner Faye B. Goldberg (hereafter sometimes referred to as Faye) are husband and wife, presently residing at Daly City, California, a community property state. Petitioners filed separate returns for the years 1948 and 1951 and joint returns for the years 1949 and 1950 with the then collector of internal revenue for the first district of California. William Barrett, the father of Faye, died testate on April 21, 1944. Moses Barrett and Faye were named as executors. *164 Moses and William were brothers. The will was admitted to probate on June 28, 1944, and the estate was in the process of administration until March 19, 1954, when the court entered its decree of final distribution. On December 8, 1944, the Probate Court ordered the executors to pay for maintenance of Rose Barrett, the decedent's widow, a family allowance of $500 per month during the progress of the settlement of the estate. This amount was paid for only a few months and thereafter the amounts that were distributed to or for Rose Barrett were distributed at irregular intervals and in irregular amounts and were not identified as a family allowance. Approval by the court for this course of conduct was not requested or secured prior to the closing of the estate in 1954. The will of William Barrett bequeathed certain personal property to his widow and left the residue of the estate to Faye and Moses, in trust - "To receive and collect the principal and income of the Trust Estate, and after the payment and deductions hereinbefore mentioned, to pay and/or accumulate, and/or use, or invest, own, apply and distribute the same to and for the purpose hereinafter stated, and/or the use and benefit *165 of the beneficiary hereinafter named; and to convey and transfer the corpus or principal of the trust estate with accumulations, if any, as hereinafter provided." Such provisions were to pay two brothers $25 per month each for life, 50 per cent of the remaining net balance "shall be paid in monthly, or other convenient installments to my wife" for life and - "The other Fifty (50%) Percent of the entire remaining net balance of the income received from said Trust Estate and available for distribution, after said deductions as aforesaid shall be paid, used and expended in monthly, or other convenient installments, for the care support and comfort of my said daughters FAYE BARRETT, LILLIAN BARRETT and GUSSIE BARRETT ROSENTHAL in equal proportions, or to the survivor of them." Although the decree of final distribution of the estate of William Barrett was not obtained until about 10 years after the will was admitted to probate, during the 10-year period Moses and Faye managed the properties which were to be held in trust and distributed the income among the members of the family who were named in the will as beneficiaries of the trust, and the income from the properties was reported on *166 fiduciary returns entitled "Trust of William Barrett (Deceased)." The distributions of the income among the beneficiaries were not made exactly in the manner provided in the trust created under the will but rather in the manner agreed upon by the beneficiaries as best suited their needs. At the time of the decree of final distribution in 1954, all of the legatees waived an accounting. During the period here involved the estate of William Barrett, deceased, received income from real estate, which real estate was held by the estate and Moses, as tenants in common. This income was reported by Moses on a partnership return, and the amount shown as income attributable to the partnership interest of the estate of William Barrett was reported by Moses as fiduciary on Form 1041, fiduciary income tax returns, entitled "Trust of William Barrett (Deceased)." Faye, as coexecutor, received interest income on the mortgages comprising the balance of the estate, and such interest was reported in the said fiduciary returns. On the aforesaid fiduciary income tax returns filed by Moses in the name of the "Trust of William Barrett (Deceased)" the amount reported as distributable to beneficiaries, and *167 the amount reported as distributable to Faye for each year were as follows: Distributable
Amount Reported
Income as
as Distributable
Year
Reported
to Faye
1948
$8,169.63
$1,292.41
1949
8,648.78
1,412.20
1950
8,518.65
1,379.66
1951
8,154.09
1,014.21 *
On the fiduciary returns, Moses failed to claim depreciation allowable on the real estate in the amount of $674.41 each year. After allowance of the depreciation, the corrected income and Faye's distributive share were as follows: Corrected Dis-
Faye's Corrected
tributable
Distributable
Year
Income
Share
1948
$7,495.22
$1,149.20
1949
7,974.37
1,229.06
1950
7,844.24
1,207.37
1951
7,479.68
1,146.61 *
On petitioners' joint income tax returns for the years 1949 and 1950 they claimed deductions in each year for charitable contributions totaling $100 and on their separate returns for 1951 they claimed community deductions for charitable contributions in a total amount of $125. In the notice of deficiency, respondent allowed charitable contributions in the amount of $52 in each year and disallowed the excess over this amount. Petitioners were accustomed to donating each year to such charities as Red Cross, March of Dimes, Heart Association, Cancer *168 Society, Muscular Dystrophy, and those to which other Americans usually give. These contributions were in an amount not less than $48 per year. Faye also contributed at least $52 per year to Temple Beth Sholum. She made these donations in memory of and out of respect for her father. For the years 1948 and 1949 petitioners incurred and paid automobile expenses in the amounts of $721.97 and $812.79, respectively. Fifty per cent of these amounts constitutes ordinary and necessary business expenses and was allowed by the respondent as such. The interest received from the Connecticut Mutual Life Insurance Company on Policy No. 523560 for the years 1948 through 1951 in the respective amounts of $9.33, $9.98, $10.66 and $11.41 belonged to Hattie Goldberg, the mother of Eugene. On the separate return filed by Faye for 1948 no items of itemized income or deductions were shown but there was the entry "1/2 from Husband $2,474.29." On the separate return which she filed for 1951, she reported income from the estate of William Barrett in the amount of $1,014.21 as separate property; "1/2 Community Income from husband's return $1,924.44;" and total deductions of $722.52, with a statement "See Spouse's *169 return for details." Eugene entered the employment of the bureau of internal revenue on November 16, 1948, as a deputy collector. For a month he was assigned as a clerk in the excise tax division and thereafter through the years herein involved was assigned to the collection division where it was his duty to serve warrants and distraints. During his service with the internal revenue, he never investigated or audited tax returns and, except for about a week of special training late in 1949 and 1950, he had no special instruction in the preparation of tax returns. At the time of the hearing, petitioners had been married for about 14 years. Prior to the years here involved, Faye had always had their individual returns prepared. When the time came to prepare the returns for 1948, she thought Eugene ought to be able to make them out since he was then "an Internal Revenue man." He then prepared their returns for 1948 and also later prepared all of their returns for the years 1949, 1950, and 1951. Prior thereto he had never prepared any income tax returns. Eugene first went to work for the United States Government on April 23, 1941, as an assistant storekeeper with the Quartermaster Corps, *170 Presidio of Monterey, California. His job there was to keep stock records. On May 29, 1944, he was employed by the War Assets Administration in a clerical position and remained there until he started with the Internal Revenue in 1948. Eugene's activities as a real estate salesman in 1948 consisted only of spending some time on Sundays sitting at houses that were being offered for sale. He did not act as a real estate salesman in 1949. In the 1948 return filed by Eugene he reported as community income from wages, salaries and commissions the following amounts from the following sources: War Assets Administration (husband)
$3,492.64
Grant Realty Co. (husband)
324.91
Grant Realty Co. (wife)
356.01
Internal Revenue (husband)
217.38
Total
$4,390.94
During the first half of 1950, Eugene was detailed by the Internal Revenue for the tax season to aid taxpayers in the preparation of simple returns. He did not quiz the taxpayers in detail about their affairs but simply asked them for all their information and helped them calculate their tax. When he was presented with a more complicated return, he was directed and did refer such taxpayers to those of greater training and capabilities in such problems. *171 At the time Eugene prepared his and his wife's separate returns for 1948, the joint returns for 1949 and 1950, and the separate returns for 1951, he asked Faye for all the information she had in order to prepare such returns. Faye had certain separate property of her own and during 1948 and 1949 was employed as a real estate saleswoman. During 1948, 1949, and 1950, Eugene had a margin account with the brokerage firm of Walston, Hoffman & Goodwin. During the years 1948, 1949, and 1950, he received monthly statements from the firm showing the status of the account. In preparing the family income tax returns, Eugene omitted items of income therefrom as follows: Items
1948
1949
1950
1951
Community Income: Dividends
$198.75
$ 159.00
$ 237.50
$321.00
Interest
1.77
2.58
2.32
52.00
Net long-term capital gain
79.96
0
0
540.11 *
Faye's Separate Income: Dividends
136.25
106.00
131.00
144.00
Interest
49.88
76.38
64.49
79.59
Net short-term capital gain
463.33
0
0
0
Estate of Barrett
0
1,229.06
1,207.37
0
The above dividend income from community property consisted of a number of separate credits for dividends made to the brokerage account of Walston, *172 Hoffman & Goodwin and a certain number of separate checks for dividends from stocks outside of the brokerage account made payable to Eugene and Faye jointly. In the joint return for 1950, Eugene reported estimated dividend income of $100 and in each of the separate returns for 1951 Eugene reported estimated dividend income of $37.50, or a total of $75. Approximately 90 per cent of the abovementioned omitted interest income from Faye's separate property came from two savings accounts carried in the names of Faye and her mother, Rose Barrett. The above-mentioned net long-term capital gain of $79.96 omitted from the 1948 returns consisted of a gain of $94.08 from the sale of 20 shares of Anaconda stock on November 15, 1948, less a loss of $14.12 from the sale of 20 shares of Sears Roebuck stock on the same day. Both the gain and the loss were omitted from the 1948 returns. At the time Eugene prepared the separate returns for 1951 he attached a note to his individual return which read as follows: "I have a capital gain. The extent of the gain I have not been able to ascertain as I cannot find the bills on what the stocks cost me. As soon as I can find the bills or ascertain what the cost *173 price was I will file an amended return and report this capital gain." The above-mentioned short-term capital gain of $463.33 omitted from the separate return of Faye for the year 1948 is the net result of two transactions, one resulting in a gain and the other in a loss, neither of which was reported in the return. The one resulting in a gain was from the sale of some property on Anza Street on February 19, 1948. Faye and Eugene S. Grant purchased the Anza Street property on October 17, 1947. They each had a 50 per cent interest in the property. They sold the property at a gain and Faye's share of the gain was $602.72. On November 15, 1948, Faye sold 30 shares of Sears Roebuck stock at a loss of $139.39. The difference between $602.72 and $139.39 is $463.33. Petitioners each filed an amended return for the year 1951. Eugene's amended return was received in the collector's office on October 9, 1952, and Faye's amended return was received on October 10, 1952. The joint return for 1949 was filed on March 15, 1950, showing gross income in the amount of $4,558.60. Petitioners jointly executed a series of waivers [3]of the statute of limitations provided in section 275 on Form 872, the first *174 of which was executed on February 28, 1955. No part of any of the deficiencies determined by the respondent for each of the taxable years 1948 to 1951, inclusive, is due to fraud with intent to evade tax. The returns filed by petitioners for each of the taxable years involved herein were not false and fraudulent returns with intent to evade tax. The separate deficiencies and additions to the tax determined against each of the petitioners for the year 1948 are barred by the statute of limitations. The joint deficiency and additions to the tax determined against petitioners for the year 1949 are not barred by the statute of limitations. Opinion Petitioners on the first issue contend that the distributions from the estate of William Barrett, deceased, were improperly included in the gross income of petitioners for the years involved and should have been taxed to the *175 estate of William Barrett, deceased, under sections 161 and 162. [4] *176 This is a question of law. The facts are fully set forth in our findings. Petitioners' main point is that the distributions in question bore no relationship to the term of Barrett's will, the court orders, or good practice on the part of fiduciaries and, under the laws of the State of California, were subject to restoration to the estate. It is incorrect to say *177 the distributions bore "No" relationship to the terms of the will or court orders. It may be conceded that they were not in exact accordance therewith. For instance, under the court order dated December 8, 1944, the coexecutors were to pay the widow a family allowance of $500 per month "during the progress of the settlement of the estate or until the further order of this Court." These payments were literally made for only a few months although the estate was in the process of administration until 1954. The trustees did make further payments to the widow from time to time. As far as the record shows, no complaint was ever made by anyone, including decedent's widow, and, at the time of the decree of final distribution, all of the legatees waived an accounting. Under the terms of the will, the decedent bequeathed and devised the residue of his estate to Moses and Faye, in trust, to pay two brothers each $25 per month for life, 50 per cent of the balance to his widow for life, and the remaining 50 per cent equally to his three daughters, of whom Faye was one. The distributions here in question were made substantially in accordance with those directions. Petitioners in support of their *178 contentions rely primarily upon our decision in Estate of B. Brasley Cohen, 8 T.C. 784 [Dec. 15,709], wherein we held that the income from that estate was taxable to the estate because such income did not become payable to the legatees under section 162(b), nor was it properly paid or credited to the legatees under section 162(c). The facts in the Brasley Cohen case were quite different from the facts in the instant case. In Brasley Cohen there was no actual distribution or credits made on behalf of any of the devisees or legatees, whereas in the instant case distributions were made to all the legatees substantially as provided for in the will and to the satisfaction of all interested parties. The legatees thus received such distributions under a claim of right. Cf. North American Oil Consolidated v. Burnet, 286 U.S. 417. This claim was never questioned and was finally approved by the court in its decree of final distribution entered on March 19, 1954. We hold that the distributions were taxable to the legatees under section 162 rather than to the fiduciary under section 161(b). Cf. Howells v. Fox, 251 Fed. (2d) 94 (C.A. 10, 1957). The parties have stipulated that if we hold the *179 legatees taxable rather than the fiduciary then "the amounts set forth in Exhibit 5-E are the amounts which would have been distributable under the terms of the will." These amounts are $1,149.20 for 1948, $1,229.06 for 1949, $1,207.37 for 1950, and $1,146.61 for 1951. Contributions will be allowed as set forth in our findings. Cohan v. Commissioner, 39 Fed. (2d) 540 (C.A. 2, 1930). We hold that the respondent did not err in disallowing a part of the amounts deducted for automobile expenses in the returns filed for 1948 and 1949. The fifth issue is whether "any part" of any of the deficiencies involved herein "is due to fraud with intent to evade tax" under section 293(b). [5] The burden of proving fraud is upon the respondent. Sec. 1112, I.R.C. 1939. Fraud is never presumed but must be established by clear and convincing evidence. Henry S. Kerbaugh, 29 B.T.A. 1014, affd. 74 Fed. (2d) 749 (C.A. 1, 1935); George L. Rickard, 15 B.T.A. 316; Arlette Coat Co., 14 T.C. 751; Frank Imburgia, 22 T.C. 1002, 1014; W. A. Shaw, 27 T.C. 561, affd. 252 Fed. (2d) 681 (C.A. 6, 1958). Fraud involves the determination of petitioners' "intent" at the time the returns were filed. E. S. Iley, 19 T.C. 631. *180 In that case we said: "There is lacking one essential element, the very heart of the fraud issue, namely, the intent to defraud the Government by calculated tax evasion. "Although intent is a state of mind, it is nonetheless a fact to be proven by the evidence. It must appear as a positive factor. In determining the presence or absence of fraud the trier of the facts must consider the native equipment and the training and experience of the party charged. The whole record is to be searched for evidence of the intent to defraud." Eugene had never prepared an income tax return prior to the returns here in question. His training and experience along that line were practically nil. He had little native equipment that could be said to qualify him in the preparation of complicated income tax returns. True, he was employed by the Internal Revenue in November 1948 but only in the position of serving warrants and distraints. *181 He never investigated or audited tax returns and, except for about a week of special training late in 1949 and 1950, he had no special instruction in the preparation of tax returns. Faye had always had their individual returns prepared but when the time came to prepare the returns for 1948, she thought Eugene ought to be able to do the job since he was then employed by the Internal Revenue. The basis for the fraud determined by the respondent is the various amounts of taxable income that were omitted from the returns. These amounts are now agreed upon and are set out in our findings. Petitioners now agree that all of these omitted items are taxable and should have been reported except, of course, the distributions from the estate of William Barrett, which latter amounts we held, under the first issue discussed above, were also taxable. All of these amounts, except the distributions from the estate, are relatively small in amount. No dividends were reported in the 1948 and 1949 returns, and only estimated dividends were reported in the 1950 and 1951 returns. Eugene testified that at the time of filing the returns it was his understanding that the dividends credited to his brokerage *182 account were not income for the reason that he owed money to the stockbroker and that he was not entitled to the dividends. As to the dividends from stocks outside of the brokerage account, Eugene testified that he had kept no records of such dividends; and that "they were small amounts, 5, 10, 15 dollars, maybe quarterly, and I just took each check and I spent the money, I cashed them and spent it, and that was it. I didn't keep any records." The same explanation, lack of records, was given for the failure to report Faye's separate income from dividends and the community income from interest. As to Faye's separate income from interest, approximately 90 per cent of such interest consisted of one-half of the interest credited to two savings accounts in the names of Faye and her mother. Faye testified she did not report such interest to Eugene as she was under the impression that the total of such interest had been reported by her mother. Eugene had little or no knowledge of his wife's financial affairs and relied on the information Faye gave him. The omitted net long-term capital gain for 1948 of $79.96 consisted of the difference between a gain from the sale of some Anaconda stock *183 and a loss from the sale of some Sears Roebuck stock. Eugene failed to deduct the loss as well as to report the gain. Also, in the 1948 return, he failed to deduct Faye's separate loss of $139.39 from the sale of 30 shares of Sears Roebuck stock which she owned as her separate property. It may be noted here that Eugene, over the 4-year period, failed to take, in addition to the above stock losses, approximately 13 items as deductions from gross income for which the respondent made due allowance in the deficiency notices. Eugene testified that he simply overlooked these items in their favor. The explanation for the failure to report Faye's separate net short-term capital gain for 1948 is that Faye was under the impression at the time the returns were filed that her share of the gain from the sale was reflected in the withholding statement from Grant, which statement she turned over to Eugene to be attached to the return. Grant testified he had no knowledge of ever rendering to Faye an account of the cost and expenses of the Anza Street property. Eugene testified that at the time he prepared the 1948 returns he did not know that Faye and Grant had sold the Anza Street property. While *184 this explanation is weak, we do not think it shows an intent on the part of petitioners to defraud. We think that the most than can be said against petitioners on this issue of fraud is that both petitioners were very negligent in the preparation and filing of their income tax returns for the years 1948 to 1951, inclusive. Negligence, however, whether slight or great, is not equivalent to the fraud with "intent" to evade tax named in the statute. Mitchell v. Commissioner, 118 Fed. (2d) 308 (C.A. 5, 1941), reversing 40 B.T.A. 424; William W. Kellett, 5 T.C. 608, 618; Walter M. Ferguson, Jr., 14 T.C. 846, 849; appeal to C.A. 4 dismissed nolle prosse; L. Glenn Switzer, 20 T.C. 759, 764-765; Cleveland Thurston, 28 T.C. 350, 355; and John and Mary Marinzulich, 31 T.C. 487. The court in the Mitchell case said: "Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence does not establish either. Griffths v. Commissioner, 7 Cir., 50 Fed. (2d) 782. * * *" The Mitchell case has *185 been cited with approval in William W. Kellett, supra; Carter v. Campbell, Jr., 264 Fed. (2d) 930 (C.A. 5, Mar. 10, 1959), and several other cases. In Walter M. Ferguson, Jr., supra, we said: "A strong suspicion that Walter knew his income was more than he was reporting might arise from the record. But suspicion of incredible ignorance or of actual knowledge on his part is not enough. Negligence, careless indifference, or disregard of rules and regulations would not suffice. The petitioners dismissed their responsibility to file proper returns much too lightly. But the Commissioner, to support the fraud penalties, must prove by clear and convincing evidence that the taxpayers, or one of them, intended to defraud him. The evidence is not quite adequate to support that burden. * * *" We have carefully considered all of the evidence, including all of the testimony given by Eugene and Faye, the latter being over the objection of petitioners' counsel that, under section 14-306 of the D.C. Code, [6] neither could be compelled to testify for or against each other, and have come to the conclusion that respondent has not proven by clear and convincing evidence that petitioners were motivated *186 by an intent to defraud. We have so found as an ultimate fact and we so hold. It follows from our determination of the fraud issue that the separate deficiencies and additions to the tax determined against each of the petitioners for the year 1948 are barred by the statute of limitations. As to the year 1949, petitioners, in their joint return for that year, reported a gross income of $4,558.60. The omitted gross income for 1949 amounts to a total of $1,573.02. Since this latter amount is in excess of 25 per centum of the amount of gross income stated in the return, it follows, under section 275(c), that the joint deficiency and additions to the tax determined against petitioners for the year 1949 are not barred by the statute of limitations. Since petitioners offered no evidence as to the additions to the tax under section 294(d), we sustain the respondent's determination in this respect except insofar as those amounts are automatically *187 changed in the recomputation of the deficiencies. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: J. Eugene Goldberg and Faye B. Goldberg, Docket No. 64876; and Faye B. Goldberg, Docket No. 64890.↩
2. Unless otherwise stated herein, all references to section numbers are to the Internal Revenue Code of 1939.↩
*. Amount stipulated.↩
*. Amount stipulated.↩
*. $538.25 of this amount was reported in an amended return filed for 1951 in October 1952.↩
3. It is stipulated that these waivers are only operative if respondent can establish facts sufficient to bring the situation pertaining to the year 1949 within the provisions of section 275(c) relating to the omission from gross income of an amount in excess of 25 per centum of the amount of gross income stated in the return.↩
4. SEC. 161. IMPOSITION OF TAX. (a) Application of Tax. - The taxes imposed by this chapter * * * upon individuals shall apply to the income of estates or of any kind of property held in trust, including - * * *
(3) Income received by estates of deceased persons during the period of administration or settlement of the estate * * *
(b) Computation and Payment. - The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary * * *. SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * *
(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. * * * (c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estates, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary; [Italics supplied.]↩
5. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid * * *.↩
6. § 14-306. Husband and wife competent but not compellable witnesses. In both civil and criminal proceedings, husband and wife shall be competent but not compellable to testify for or against each other. (Mar. 3, 1901, 31 Stat. 1358, ch. 854, § 1068.)↩